**CITY OF LOUISVILLE, Movant,**

v.

**LOUISVILLE PROFESSIONAL FIRE-FIGHTERS ASSOCIATION, LOCAL UNION NO. 345, IAFF, AFL–CIO, By and Through its president, Ronald E. GNAGIE, and Ronald E. Gnagie, Individually, and State Labor Relations Board, Respondent.**

No. 89–SC–441–D.

Supreme Court of Kentucky.

May 9, 1991.

Rehearing Denied Sept. 26, 1991.

Frank X. Quickert, Jr., Director of Law, City of Louisville, David Leightty, Cecil A. Blye, Jr., Asst. Directors of Law, Louisville, for movant.

Herbert L. Segal, Irwin H. Cutler, Jr., Segal, Isenberg, Sales, Stewart, and Cutler, Louisville, for respondent.

Rex Hunt, General Counsel, Commonwealth of Kentucky Labor Cabinet, Frankfort, for State Labor Relations Bd.

SPAIN, Justice.

This action arises out of a grievance filed by the Louisville Professional Firefighters Association, Local Union No. 345, IAFF, AFL–CIO (union), charging the City of Louisville, Kentucky (city), with an unfair labor practice.

In 1986, the city and the union entered into a two-year collective bargaining agreement (agreement) which established the work schedule of the city's firefighters. However, the agreement omitted the schedule of the arson investigation unit.

On August 4, 1986, the city unilaterally implemented a third shift into the two-shift schedule of the arson unit. The city did not consult nor bargain with the union concerning the schedule change because it believed the agreement did not prevent such a change in hours. The union formally objected to this change and filed a grievance with the State Labor Relations Board (Board). The union claimed that the city did not have the right to make such a change in the schedule of the arson squad. A hearing was held before an arbitrator on August 7, 1986. The arbitrator, in a nonbinding decision, found that the new shift was a change in the employees' working conditions and ordered the city to negotiate with the union regarding the change in hours. The city agreed to negotiate but refused to change the hours of the arson squad back to the *status quo ante*. *See NLRB v. Truckdrivers Union Local 164*, 753 F.2d 53 (6th Cir.1985).

The union filed suit in the Jefferson Circuit Court (Division Seven), seeking injunctive relief from the changed work schedule. The union claimed that the city was in violation of the agreement, and of the arbitration award. The city continued to argue that the contract permitted it to change the hours without notice to the union. The parties stipulated in this first action that the union "is the exclusive representative under KRS Chapter 345 for purposes of collective bargaining for a unit of the Defendant's employees in its Division of Fire." The city also argued vehemently before Division Seven that KRS Chapter 345 governed the labor relations between the city and the union and that the dispute between the parties should be decided by the Board. The city stated in its brief to Division Seven:

As public employees of the City of Louisville, this Union, the employees in question, and the City of Louisville are not covered by the Federal labor laws which regulate labor relations in the private sector. Indeed, public employers are expressly excluded from the definition of employer in the National Labor Relations Act. 29 U.S.C. Sec. 152(2).

However, there is a state statutory enactment which governs the labor relations between the City of Louisville and the Firefighters Union. The Statute in question is KRS Chapter 345, under which the Union was recognized as collective bargaining representative for Firefighters of the City of Louisville ...

Further, the city, in supplemental briefs requested by the trial court stated:

In Kentucky, the Firefighters' Collective Bargaining Act, embodied in KRS Chapter 345, creates a State Labor Relations Board, which has exclusive jurisdiction over the unfair labor practices which are established in that chapter. It is KRS Chapter 345 which creates the obligation to bargain, and makes failure to bargain an unfair labor practice. The procedures prescribed in Chapter 345 are therefore the exclusive remedies for an alleged unfair labor practice.

The Division Seven trial court found in its Findings of Fact, Conclusions of Law, and Order, that the city had committed an unfair labor practice when it unilaterally added the third shift to the schedule of the arson squad. Further, the trial court in this first action held that "[t]he City had a [statutory] duty to bargain before adding a third shift unless the Union had given up the right to bargain on this issue, and the contract contains no such provision." Finally, the trial court agreed with the city's argument that the union was required to

seek redress before the Board to remedy an unfair labor practice. The case was dismissed without prejudice and remanded to the Board to determine whether the city had committed an unfair labor practice. Neither party appealed from the first decision of the trial court.

The union then compliantly filed an administrative complaint before the Board claiming that the city had committed an unfair labor practice when it failed to bargain collectively concerning the new shift. This administrative complaint was expressly filed under the provisions of KRS Chapter 345. The Board, without deciding the issue of whether the city had committed an unfair labor practice, treated the dispute as a matter of contract interpretation, and dismissed the complaint.

The union appealed the decision of the Board to the Jefferson Circuit Court (Division Three). The union argued that the Memorandum and Order of the Board should be reversed and remanded because its decision was arbitrary and capricious without an adequate evidentiary basis for its findings of fact and conclusions of law. The union also requested that Division Three find that the unilateral change of hours was an issue for collective bargaining and within the jurisdiction granted the Board by KRS 345.070. The city for the first time now argued in the second trial court action that KRS Chapter 345 was unconstitutional because the statute was "special" or "local" legislation under Sections 59 and 60 of the Kentucky Constitution. The city did a further "about-face" and argued that KRS Chapter 345 was inapplicable because the population of Louisville, Kentucky, had dropped below 300,000 people; the threshold population requirement for the application of KRS Chapter 345.

The Division Three trial court in this second action held that KRS Chapter 345 was constitutional and ruled that the city was barred under the doctrines of *res judicata* and waiver from asserting the argument that KRS Chapter 345 was inapplicable. The trial court also set aside the Board's Orders of February 17, 1987, and

May 9, 1987, and held that its decision was "undeniably" arbitrary and capricious. The trial court remanded the dispute to the Board for further adjudication on the issue of whether the city had committed an unfair labor practice when it unilaterally added the third shift, and on the issue of whether the city had committed a statutory violation under KRS 345.070 by failing to bargain collectively with the union.

The city appealed the decision of Division Three to the Court of Appeals, which affirmed on all issues. We granted discretionary review.

The issues which we review are: 1) whether KRS Chapter 345 is constitutional; 2) whether the city is barred under the doctrines of *res judicata* and waiver from raising the issue of the applicability of KRS Chapter 345; and 3) whether the State Labor Relations Board acted arbitrarily and capriciously. We will address the *res judicata* and waiver issue first.

Under the doctrine of *res judicata* or "claim preclusion," a judgment on the merits in a prior suit involving the same parties or their privies bars a subsequent suit based upon the same cause of action. *Lawlor v. National Screen Service Corporation*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Vaughn's Adm'r v. Louisville & N.R. Co.*, 297 Ky. 309, 179 S.W.2d 441 (1944). In *Newman v. Newman*, Ky., 451 S.W.2d 417 (1970), we set forth the elements of *res judicata:*

> The general rule for determining the question of *res judicata* as between parties in actions embraces several conditions. First, there must be identity of the parties. Second, there must be identity of the two causes of action. Third, the action must be decided on its merits. In short, the rule of *res judicata* does not act as a bar if there are different issues or the questions of law presented are different.

*Id.* at 419.

The term "estoppel" has frequently been used in connection with the doctrine of *res judicata,* not only with respect to the relitigation of particular issues in a subsequent action on a different cause of

action, but also with respect to the relitigation of the same cause of action. 46 Am Jur 2d, Judgments, Section 397. (Footnotes omitted.) The more recent trend is to describe the latter aspect of the doctrine of *res judicata* as a "collateral estoppel" or a "collateral estoppel by judgment," as distinguished from the "direct estoppel by judgment" or "merger" where the earlier and later causes of action are identical. *Id.* (Footnotes omitted.) The use of collateral estoppel regarding previously adjudicated issues has been endorsed by the United States Supreme Court and adopted by this Court. *Parklane Hosiery Company v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Sedley v. City of West Buechel,* Ky., 461 S.W.2d 556 (1971).

In *Lawlor, supra,* 349 U.S. at 326, 75 S.Ct. at 867, the U.S. Supreme Court distinguished the doctrines of *res judicata* and collateral estoppel as follows:

> The basic distinction between the doctrines of *res judicata* and collateral estoppel, as those terms are used in this case, has frequently been emphasized. Thus, under the doctrine of *res judicata,* a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

And in *Cream Top Creamery v. Dean Milk Company, Inc.,* 383 F.2d 358, 362 (6th Cir.1967), the United States Court of Appeals determined that the related doctrine of collateral estoppel, also known as the "issue preclusion" doctrine, is applicable in the following situation:

> [W]here the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to

apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action. (Citation omitted.)

We agree with the Court of Appeals that the parties and the subject matter in the first and second circuit court actions are the same. The subject matter in both actions from the viewpoint of the union was whether the city had committed an unfair labor practice by its unilateral implementation of a third shift in the schedule of the arson squad. The only change in the two cases was the position of the city. The city argued in the first action that the Board had exclusive jurisdiction under KRS Chapter 345 to resolve the parties' dispute. The city then reversed its position in the second action and claimed that KRS Chapter 345 *did not* govern the dispute and, therefore, the Board did not have jurisdiction to hear the case. By invoking the statute and the Board's jurisdiction in the first action, the city cannot later deny jurisdiction and the applicability of KRS Chapter 345 in the second action.

The city argues that the earlier Division Seven decision was a nullity because in it the trial court ultimately decided that it did not have jurisdiction to hear the case. The city also argues that, accordingly, the language in the trial court's opinion is dicta and non-binding in the subsequent action because the decision was dismissed "without prejudice."

The general rule is that a former adjudication is regarded as not being on the merits, within the scope of the doctrine of *res judicata,* where it was based upon the fact that the court lacked jurisdiction. 46 Am Jur 2d Judgments, Section 500. (Footnotes omitted.) We also note the rule which states that the inclusion of the term "without prejudice" in a judgment of dismissal ordinarily indicates the absence of a decision on the merits, and leaves the par-

ties free to litigate the matter in a subsequent action, as though the dismissed action had not been commenced. *Overstreet v. Greenwell,* Ky., 441 S.W.2d 443, 447 (1969).

However, where a judgment disposes of an action without a determination on the merits, it is nevertheless conclusive as to the issues or technical points actually decided therein, and this rule has been applied to a judgment based on a lack of jurisdiction, so as to render conclusive the prior court's determination of its lack of jurisdiction, as well as questions material to the issue of jurisdiction and actually decided by the judgment. 46 Am Jur 2d, *supra* at section 500. (Footnotes omitted.)

The first trial court action decided the ultimate issue of whether the circuit court or the Board had subject matter jurisdiction to hear the case. The decision made final and conclusive the issue of whether KRS Chapter 345 applied to the parties' dispute, even though the trial court dismissed the case "without prejudice." To reach this result, the trial court was required to make findings of fact and conclusions of law on its subject matter jurisdiction. The trial court then determined that the agreement was governed by KRS Chapter 345 and that the Board had exclusive jurisdiction under the statute to hear the dispute. Therefore, we find that to this extent, the merits of the case were reached by the trial court. We agree with the trial court and the Court of Appeals that the city is barred under the doctrine of *res judicata* and waiver from asserting the issue of the applicability of the KRS Chapter 345 in the subsequent trial court case. We also find that the city is collaterally estopped from relitigating the issue. *Sedley v. City of West Buechel, supra.*

Since we agree that the decision of the first action was *res judicata,* we do not reach the merits of whether KRS Chapter 345 was unconstitutional because we find that issue to be moot.

■ We also agree with the Court of Appeals and the trial court that the State Board's decision was both arbitrary and capricious and without an adequate evidentiary basis. The trial court specifically decided that the jurisdiction to resolve the parties' dispute was vested under KRS Chapter 345 in the Board. The case should be remanded to the Board on the issues of whether the city had committed an unfair labor practice when it unilaterally added the third shift, and whether the city had failed to collectively bargain with the union under KRS Chapter 345.

The decisions of the Court of Appeals and the Jefferson Circuit Court are affirmed. The case is remanded to the State Labor Relations Board with instructions that this administrative body consider the unilateral change in hours of the arson squad as an issue for collective bargaining within its exclusive jurisdiction, as mandated by KRS Chapter 345.

All concur.