**Dianne NAPIER, Appellant,**

v.

**John R. JONES, Deceased, By and Through Jill Jones REYNOLDS, Executrix, Appellee.**

**No. 95–CA–000788–MR.**

Court of Appeals of Kentucky.

May 17, 1996.

---

Stephan Charles, Manchester, for appellant.

Marcia A. Smith, Corbin, for appellee.

Before COMBS, GARDNER and HUDDLESTON, JJ.

HUDDLESTON, Judge.

Dianne Napier appeals from a declaratory judgment entered in favor of the estate of John R. Jones (Jones) finding that certain HCA stock, owned jointly by Napier and Jones during their marriage, was the separate property of Jones and is thus a part of his estate. We affirm.

With this appeal, Napier and Jones mark their third visit to this Court. Some deciphering of the procedural background is necessary to put this matter in perspective. In 1987, Napier petitioned Whitley Circuit Court for a decree dissolving her nine-year marriage to Jones. The following year the court granted the petition and Napier took an appeal, arguing that the circuit court had abused its discretion in dividing property between the parties. This Court agreed and reversed the decree.

On remand, Napier and Jones took additional discovery and resubmitted the case to the court. In regard to the HCA stock, the circuit court found that 614 shares of the stock were Jones' separate property and 155.5 shares were marital property; all shares were awarded to Jones. Napier took a second appeal, arguing that the circuit court had committed multiple errors in the second attempt to divide the parties' property—among them the awarding of the HCA stock to Jones.

This Court again addressed Napier's and Jones' concerns at length. While the circuit court was reversed on its disposition as to two items of personal property not relevant in this appeal, the court's decision as to the remainder of the distributions, including the HCA stock, was affirmed.

During the pendency of the second appeal, Jones died. At this juncture, Napier moved to file a supplemental brief with the Court, arguing that the death of Jones caused the HCA stock account to automatically be vest-

ed in her as the survivor of the joint account. Thus, she contended, the circuit court's decision to award the stock to Jones should be reversed. This Court denied the motion, stating:

> As the issue presented in the supplemental brief is a new issue not heretofore considered by the trial court and which involves questions of fact and law to be resolved in a new action, this Court declines to consider it, a reply brief is unnecessary, and the motion is DENIED.

> This Court's opinion in this case will be rendered forthwith, and it will affirm in part, reverse in part and remand the action to the Whitley Circuit Court. The issue concerning the distribution of the HCA account, however, is affirmed therein.

On remand, Napier's arguments regarding the effect that Jones' death had on the ownership of the HCA stock were met with a declaratory judgment action filed by Jones' estate to have the circuit court pronounce the stock an estate asset. Jones' motion for summary judgment was granted on the basis that the previous decision regarding the stock distribution and this Court's affirmance of that action were *res judicata*. Napier's appeal of that decision is the subject of this opinion.

Napier contends that the circuit court erred in holding that *res judicata* barred the litigation of this issue. She argues that the ownership of the stock should be determined by the Multiple Party Account statutes, Ky. Rev.Stat. (KRS) 391.300 to 391.360. In addition, Napier argues that the contract which set up the account containing the HCA stock allowed Jones to change the named holders of that account after the trial court determined that he was entitled to sole ownership. This contract, coupled with Jones' failure to take any steps to remove Napier's name from the account or to alter its nature as a joint tenancy with the right of survivorship, suggests that he intended for Napier to retain a survivorship interest.

Jones' executrix contests these assertions by Napier and adds that other jurisdictions

have held that a dissolution decree acts to terminate interests held in joint tenancy. Napier responds that Jones should be precluded from arguing that the decree automatically terminated the joint tenancy since the trial court did not first hear and decide the issue.

■ We initially address the *res judicata* issue and its applicability to this case. The doctrine of *res judicata* holds that:

> [A] judgment on the merits in a prior suit involving the same parties or their privies bars a subsequent suit based upon the same cause of action. (citations omitted)
> * * *

> The general rule for determining the question of *res judicata* as between parties in actions embraces several conditions. First, there must be identity of the parties. Second, there must be identity of the two causes of action. Third, the action must be decided on its merits. In short, the rule of *res judicata* does not act as a bar if there are different issues or the questions of law presented are different.

*City of Louisville v. Louisville Professional Firefighters Ass'n*, Ky., 813 S.W.2d 804, 806 (1991) (quoting *Newman v. Newman*, Ky., 451 S.W.2d 417, 419 (1970)).

■ *Res judicata* principles are appropriately applied in this case because the essential fact which Napier seeks to prove is that she owns the HCA stock. That fact has been established by the prior litigation between Napier and Jones.[1] However, we believe that the better view is that the doctrine of collateral estoppel acts to bar Napier's attempt to reargue an issue that has previously been settled. Collateral estoppel is viewed as a subdivision of *res judicata* in Kentucky. *Revenue Cabinet, Commonwealth of Kentucky v. Samani*, Ky.App., 757 S.W.2d 199, 201 (1988).

■ Although collateral estoppel and *res judicata* are cut from the same cloth, the

---

1. Jones' estate was substituted as the real party in interest during the pendency of the second appeal after Jones' death. Therefore, the estate was a party in the previous lawsuit as contemplated by *res judicata* principles.

effect of collateral estoppel is different from that of *res judicata:*

> The basic distinction between the doctrines of *res judicata* and collateral estoppel, . . . has frequently been emphasized. Thus, under the doctrine of *res judicata*, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

*City of Louisville, supra,* 813 S.W.2d at 807 (quoting *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955)). Kentucky adopted the use of collateral estoppel or claim preclusion in *Sedley v. City of West Buechel,* Ky., 461 S.W.2d 556, 559 (1970).

The use of collateral estoppel by Jones in this case is what is classified as "offensive collateral estoppel." A declaratory judgment action has been recognized as a proper tool to seek its application. *Revenue Cabinet, Commonwealth of Kentucky v. Samani, supra,* 757 S.W.2d at 201.

Thus, collateral estoppel applies to prevent Napier from relitigating the issue of ownership of the HCA stock. That fact has been established, and the awarding of the stock to Jones in its entirety has been affirmed by this Court. Napier cannot now challenge the law of the case. *See Newman v. Newman,* Ky., 451 S.W.2d 417, 420 (1970). Since we decide that the application of collateral estoppel is appropriate, we need not address Napier's argument that a fact question concerning the existence and effect of a contract between Jones, Napier and the bank at which the stock is administered is presented. Napier is prevented from making this contention since the ownership of the stock is settled. The same holds true for Napier's argument that the Multiple Party Account statutes should determine ownership of the stock.

■ There remains a question of law to be decided even though the fact of the ownership of the stock has been conclusively established. That is, what effect, if any, did Jones' death have on the decree that awarded the stock to Jones? Contrary to Napier's contention that this is a factual determination, we view this as a question that involves purely legal principles. We do not think it is proper for a jury to decide what effect subsequent events can have on a judgment. Jones is not precluded from arguing this position; the circuit court specifically found that the decree in the dissolution action took precedence over any other law that might apply. This necessarily indicates that the court believed the earlier decree to be controlling and that subsequent events had no effect on its validity.

■ This is a position with which we are in agreement. Napier cites *Ping v. Denton,* Ky., 562 S.W.2d 314 (1978), for the proposition that dissolution of a marriage does not automatically terminate the rights of an ex-spouse in marital property. We have no quarrel with this general statement as far as it goes; however, when a circuit court has decided the issue of ownership of specific property and made provision for it in the divorce decree, *Ping* is inapplicable. A recent case from the Kentucky Supreme Court acknowledges as much:

> [W]e hold that the rights of an insurance policy beneficiary, including the right to receive the policy's proceeds upon the insured's death [analogous to the right to receive the proceeds of a joint account with a right of survivorship], are not affected by the mere fact of a divorce between the beneficiary and the insured. *We hasten to add* that our holding in *no way* limits the power of divorcing parties to provide for termination of either spouse's beneficiary expectancy in a property settlement agreement. (Footnote omitted.) Trial courts are likewise free in appropriate circumstances to include specific provisions in a divorce decree divesting one spouse's interests in the other's insurance policy proceeds.

*Hughes v. Scholl,* Ky., 900 S.W.2d 606, 608 (1995) (emphasis supplied).

■ In light of the Supreme Court's recognition that the circuit court has the power

to divest one spouse of an interest in property which he or she would otherwise take upon the other's death, we think it is a small step to the conclusion that the circuit court's decree, *when it specifically awards the property to one spouse,* terminates whatever prior interest the ex-spouse maintained in the property. Here, the decree, affirmed by this Court, operated to terminate the joint tenancy with right of survivorship in the HCA stock.[2]

Finally, Napier's argument that Jones could have removed her name from the account if he had intended to divest her of her interest after the divorce decree had been entered is without merit. Napier appealed this property division by the circuit court twice. Any action Jones may have taken prior to a decision from this Court may well have been precipitous.

The judgment is affirmed.

All concur.

---

**2.** For other cases with similar holdings, *see Baade v. Ratner,* 187 Kan. 741, 745, 359 P.2d 877, 880 (1961); *Mamalis v. Bornovas,* 112 N.H. 423, 428, 297 A.2d 660, 663 (1972); *Romero v.* *Melendez,* 83 N.M. 776, 779, 498 P.2d 305, 308 (1972); *Mangus v. Miller,* 35 Colo.App. 115, 118, 532 P.2d 368, 370 (1974).