**Ruth Ann SADLER, Appellant**

v.

**Barbara Lois Van BUSKIRK, Appellee**

**2013–SC–000809–DG**

Supreme Court of Kentucky.

RENDERED: DECEMBER 17, 2015

Counsel for Appellant: Thomas W. Miller, Greg Arnold Hunter, Michelle Lynn Hurley, Anna Leisa Dominick, Lexington, Miller, Griffin & Marks, P.S.C.

Counsel for Appellee: Amy E. Dougherty, Frankfort, Carolyn L. Kenton, Lexington, Mary C.E. Patton, Bluegrass Elderlaw, PLLC.

OPINION OF THE COURT BY JUSTICE VENTERS

Ruth Ann Sadler appeals from a decision of the Court of Appeals that affirmed an order of the Fayette Circuit Court denying her motion to declare that Appellee, Barbara Lois Van Buskirk, has no right to or interest in the Dreyfus Individual Retirement Account (IRA) owned by the late Richard I. Van Buskirk. For the reasons set forth herein, we reverse the Court of Appeals' decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1986, while he was married to Appellee, Richard I. Van Buskirk established an IRA with the Dreyfus Family of Funds. When Richard set up the account, he identified Barbara as the beneficiary on the account, and he never formally altered that designation. The designated beneficiary is the person to whom the institution managing the account, here Dreyfus, is directed to transfer the assets of the account upon the death of the account owner.

Barbara and Richard divorced in 1997. During the divorce proceedings, they entered into a property settlement agreement (Agreement). The Agreement was incorporated into the final decree entered by the Fayette Circuit Court to dissolve the marriage and settle the marital estate.

Richard died in November 2011. At the time of his death he was married to Ruth Ann Sadler, who is now the administratrix of his estate. In that capacity, Ruth Ann contacted Dreyfus to arrange for the disposition of the IRA. Dreyfus informed Ruth Ann that Barbara was still listed as the beneficiary on the account, and that unless otherwise directed by a court order,

Dreyfus could transfer the IRA only to Barbara.

In response to that information, Ruth Ann filed a motion under Kentucky Rule of Civil Procedure (CR) 24 to intervene in the Van Buskirks' final and long-dormant divorce action so that she could request a declaration of rights that Barbara had "no rights in and to [Richard's] Dreyfus IRA account." [1]

Although the trial court granted Ruth Ann's motion to intervene, it ultimately denied her motion to declare that Barbara had no rights to Richard's IRA. The trial court reviewed the Agreement and construed it as being "silent with respect to the beneficiary interest in [Richard's IRA]." Thus, the court concluded that the account designation naming Barbara as the beneficiary necessarily governed the dispute.

The Court of Appeals affirmed the trial court's ruling based upon its conclusion that the section of the Agreement in which Barbara disclaimed any interest in Richard's IRA made no explicit reference to the "beneficial interest" in the IRA, and therefore the assets of the IRA passed to Barbara as the named beneficiary. We granted discretionary review because this issue has not been addressed by this Court in the context of an individual retirement account.

## II. ANALYSIS

The Court of Appeals resolved this case on the basis of three important appellate decisions: *Ping v. Denton,* 562 S.W.2d 314 (Ky.1978); *Hughes v. Scholl,* 900 S.W.2d 606 (Ky.1995); and *Napier v. Jones,* 925 S.W.2d 193 (Ky.App.1996). As further ex-

---

1. The propriety of this CR 24 intervention into the divorce action instead of the initiation of an original action for a declaration of rights was not raised or addressed in the courts below. Our silence on the matter should not be construed as an endorsement of the practice.

plained below, all three cases involved the effect of a provision in a divorce decree (or a separation agreement incorporated therein) disposing of a property interest in a manner that conflicts with (1) the beneficiary designation contained in a life insurance policy as in *Ping* and *Hughes*, or (2) the joint tenancy provision of stock certificates as in *Napier*.

We agree with the Court of Appeals that the holdings of *Ping*, *Hughes*, and *Napier* are essential to the proper consideration and resolution of this case. However, we conclude the trial court and the Court of Appeals overlooked the legal significance of a crucial factual element and thereby misconstrued the relevant portion of the Van Buskirk property settlement agreement.

This case involves the transfer of an IRA to the designated beneficiary upon the death of the account owner. *Ping* and *Hughes* involve the payment of proceeds of a life insurance policy upon the death of the insured. Although those interests are similar in several aspects,[2] the actual *res* that transfers upon the death of the IRA owner is fundamentally different from the proceeds of a life insurance policy. The nature of each asset must be taken into account when it is measured against the language used in the divorce decree or in the associated property settlement agreement. Because this case requires an understanding of the Van Buskirks' property settlement agreement, we begin with a summary of the principles applicable to our review.

First, judicial review of a property settlement agreement to determine its meaning is simply a matter of contract interpretation. *Pursley v. Pursley*, 144 S.W.3d 820, 826 (Ky.2004); KRS 403.180(5) (Terms of a property settlement agreement are enforceable as contract terms). As such, an appellate court's review of a lower court's interpretation of a property settlement agreement is *de novo*. *Lynch v. Claims Management Corporation*, 306 S.W.3d 93, 96 (Ky.App.2010) ("Generally, the construction and interpretation of a contract is a matter of law and is also reviewed under the *de novo* standard.") (citations omitted).

The primary objective of the court interpreting contractual provisions is to effectuate the intention of the parties. *3D Enterprises Contracting Corporation v. Louisville & Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 448 (Ky.2005). In the absence of ambiguity in the contract, we look only to the words contained within the four corners of the agreement to determine the parties' intentions. *Id.*; *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky.2000).

*Ping* established the principle that when a divorce decree makes no provision respecting the contingent interest of the named beneficiary of a life insurance policy, the policy must be paid in accordance with the policy terms. 562 S.W.2d at 317. *Hughes*, explaining the effect of *Ping*, said that "the rights of an insurance policy beneficiary, including the right to receive the policy proceeds upon the insured's death, are not affected by the mere fact of

**2.** The interest of a beneficiary of a life insurance policy during the life of the insured and the interest of the designated beneficiary of an IRA during the life of the account owner are both "revocable expectanc[ies], contingent upon being the named beneficiary at the time of the holder's death." *PaineWebber Inc. v.*

*East*, 363 Md. 408, 768 A.2d 1029, 1035 (Md. 2001). *See also Stribling v. Stribling*, 369 S.C. 400, 632 S.E.2d 291, 294 (S.C.App.2006) ("Like the beneficiary in a life insurance policy, the IRA beneficiary merely has an expectancy interest in the IRA until the owner's death.").

a divorce between the beneficiary and the insured." 900 S.W.2d at 608.

*Hughes* reaffirmed *Ping's* holding that divorce alone does not give rise to a presumption favoring the removal of an ex-spouse as a beneficiary to an insurance policy. *Id.* at 608. But *Hughes* also recognized that the divorcing parties retained the power "to divest their interests in such beneficiary expectancies by way of a property settlement agreement." *Id.* We cautioned in *Hughes,* however, that such "divestiture language [in the divorce decree or separation agreement] should be clear and unambiguous. A general waiver of any interest in the property of the other spouse is insufficient to destroy a beneficiary's right to receive insurance policy proceeds." *Id.* at 608 n. 2.

*Napier* involved corporate stock certificates titled in the names of spouses as joint tenants with right of survivorship rather than life insurance proceeds. *Napier,* following *Ping* and *Hughes,* emphasized that the clear and unambiguous terms of the joint tenants' divorce decree would control over the conflicting language of the stock certificates. Thus, the court in *Napier* confirmed that ownership of stock did not automatically vest in the surviving joint tenant if "[the] circuit court's decree, *when it specifically awards the property to one spouse,* terminates whatever prior interest the ex-spouse maintained in the property." *Id.* at 197 (emphasis added). Consequently, "when a circuit court has decided the issue of ownership of specific property and made provision for it in the divorce decree, *Ping* is inapplicable." *Id.* at 196.

■ We believe the sound reasoning and common sense approach represented

in *Ping, Hughes,* and *Napier* with respect to life insurance proceeds and stock certificates applies with equal vigor to IRAs. While the beneficiary designation is not automatically terminated by the dissolution of the marriage between the IRA owner and the designated beneficiary, that designation can be overridden by a separation agreement by which one party agrees to forfeit that interest, or by a court's decree ordering such a divestiture.

■ Thus, as the Court of Appeals recognized, the determinative factor boils down to whether Barbara's status as the named beneficiary of Richard's IRA was compromised by the terms of the property settlement agreement she signed when she and Richard divorced. To resolve the issue, we must look to the language of the Agreement.

The only provisions of the Agreement implicated in this dispute are found in numerical paragraphs two and five:

2. *Wife's Waiver.* Wife does hereby *waive, release, and relinquish* unto Husband, his heirs and assigns forever, *all of her right, title, and interest in and to all property now owned or hereafter acquired by Husband,* including the right of dower, and does further waive, release, and relinquish all claims for future support or maintenance that she may have against him except as hereafter set forth in this agreement.[3]

5. *Insurance and Retirement.* Husband and Wife each have in his/her own name one or more *Individual Retirement Account(s).* The parties mutually agree to make *no claim upon any interest owned by the other, now or in the future, in the current accounts* and any life insurance, retirement, pension, or

---

3. Paragraph 1 of the Agreement provides for the corresponding "Husband's Waiver" using identical language.

annuity program, or contract either may acquire except as otherwise provided in this agreement; and said parties agree that any such interest owned by either party in a life insurance, retirement pension, or annuity program, or contract is and shall remain their separate and individual property, except as otherwise provided in this agreement.

(emphasis added).

Paragraph 5 explicitly addresses the Van Buskirk's insurance policies and retirement accounts.[4] We can therefore be certain that by agreeing to the provisions of Paragraph 5, Richard and Barbara each knew the specific asset being disposed of, and that they each intended the asset to be disposed of as set forth in that provision.

Paragraph 5 plainly vests in Richard the full ownership of the Dreyfus IRA. Barbara's agreement "to make no claim upon any interest owned by [Richard], now or in the future, in the [IRA]" is an unequivocal divestment of every aspect of the IRA that Richard owned at that time or at any future time. Barbara argues, as the Court of Appeals concluded, that the "beneficial interest" created by her designation as the account beneficiary is something different from Richard's ownership interest, and so the divestiture of her claim to the "interest owned by [Richard] … in the [IRA]" did not include a forfeiture of her claim as the designated beneficiary. The problem with that position is it fails to take into account the unique nature of the property that is transferred upon the death of the IRA owner and how it differs from the interest of a life insurance beneficiary.

If the property at stake were the proceeds of a life insurance policy on Richard's life, the language used in Paragraph 5 would conceivably support the disposition advocated by Barbara. That is because Paragraph 5, by its express language, affects *only* interests in property that Richard "*owned … now or in the future.*" It is obvious that the proceeds of a life insurance policy payable at Richard's death could never be property that Richard owned during his lifetime. Since Richard could not have "owned" the proceeds paid on an insurance policy on his own life, and since Barbara's disclaimer in Paragraph 5 is limited to property "owned by [Richard]," it follows that Barbara's limited disclaimer could not extend to the life insurance proceeds.

An IRA, on the other hand, is not a life insurance policy. The *res* that transfers on the death of the account owner is not like insurance proceeds, which come into existence only upon the death of the named insured. In contrast with life insurance proceeds, the assets transferred upon the death of the IRA owner are assets purchased by the account owner, and are thus "owned" by the account owner during his lifetime. When the owner of an IRA dies, the existing assets in the IRA are "transferred in-kind" to the designated beneficiary. The *res* that flows from the deceased IRA owner to the beneficiary is precisely the *same property*, regardless of the composition of the IRA's portfolio prior to the owner's death. In other words, the property that Barbara would receive as the beneficiary of Richard's IRA is exactly the same property that Richard owned at his death. And because it is the same property that Richard owned before he died, it is the same property referenced in Paragraph 5 that Barbara relinquished when she agreed to make no claim to any

---

4. The cash value of several life insurance policies and a disability insurance policy are addressed in other provisions of the Agreement.

"*interest owned by [Richard], now or in the future, in the current [IRA] accounts.*"

The failure of the Agreement to make specific reference to a "beneficial interest" is immaterial when the asset involved is an IRA because, given the nature of the property and the fact that it transfers in-kind upon death, there is no difference in the property owned by the decedent prior to death and the property that passes upon his death. Consequently, the reference in Paragraph 5 to Richard's IRA satisfies the specificity requirements of *Hughes* and compels a disposition that is at odds with the designation on the account.

In contrast with Paragraph 5, Paragraph 2 is a non-specific, general waiver of any "interest in and to all property now owned or hereafter acquired by [Richard]." No particular article or classification of property is identified. While such language may effectively express the intention of each spouse to universally disclaim any interest in the property of the other, standing alone it cannot satisfy the "clear and unambiguous" specificity required by *Hughes* to overcome a conflicting designation of another instrument, such as a life insurance policy, a stock certificate, or other document of title, including an IRA. *Id.* at 608.

While Paragraph 2 is, as stated in *Hughes,* "insufficient to destroy a beneficiary's right to receive insurance policy proceeds," *id.* it nevertheless reinforces the otherwise strong indication that Richard and Barbara clearly intended for the Agreement to conclude their relationship and disentangle their property interests. The specificity of Paragraph 5, read in the context with the general provisions of Paragraph 2, establishes with virtual certainty that the parties intended at the time of the Agreement to forego any interest, beneficial or otherwise, in each other's retirement accounts. *3D Enterprises Contracting Corporation,* 174 S.W.3d at 448.

In summary, the Agreement clearly and unambiguously assigns the full and exclusive ownership interest of the Dreyfus IRA to Richard. The Agreement correspondingly prohibits Barbara from asserting any interest in the IRA owned by Richard. As previously noted, the primary objective of our review of the Agreement is to effectuate the intention of the parties. In the absence of ambiguity, we look to the words contained within the four corners of the agreement to determine the parties' intentions. *Id.* As expressed in the Agreement, it is clear that Richard did not intend, and Barbara did not expect, to have the assets of Richard's IRA transferred to Barbara upon Richard's death. Barbara expressly disclaimed that contingency when she renounced any and all interest in Richard's IRA. Accordingly, we reverse the Court of Appeals.[5]

---

5. We have surveyed the published opinions of courts in the sister states that have addressed this issue. It is fair to say that most states have not addressed the issue as it pertains to an IRA and that sound authority can be cited for either view. Because each case turns upon the precise language of the separation agreement or divorce decree, precise and meaningful comparisons are difficult and we make no attempt to discern a majority or minority view. We adopt the view that is most consistent with our established precedent and best comports with our sense of justice and reason. The following is a representative sample of some of the opinions we have considered.

In *Crawford v. Barker,* 64 So.3d 1246, 1257 (Fla.2011), the Florida Supreme Court held that when the separation agreement assigned a deferred compensation fund to the husband, but failed to address who should receive the death benefits, "the beneficiary designation [of the plan documents] controls." Similarly, the Iowa Supreme Court in *Schultz v. Schultz,* 591 N.W.2d 212, 215 (Iowa 1999) held: "The dissolution decree awarding Daniel his IRA dealt only with present ownership of that fund. There is no language in the decree

## III. CONCLUSION

For the foregoing reasons, we conclude that Appellant, Ruth Ann Sadler as Administratrix of the Estate of Richard I. Van Buskirk, is entitled to a declaration of rights declaring that Appellee, Barbara Lois Van Buskirk, has no interest in the Dreyfus IRA that is the subject of this action. The opinion of the Court of Appeals is reversed. This case is remanded to the Fayette Circuit Court for further proceedings consistent with this opinion.

Minton, C.J.; Abramson, Cunningham, Noble and Keller, JJ., concur. Wright, J., not sitting.

indicating the court intended to affect Paula's expectancy interest as a beneficiary of this account."

The following cases present an opposing view:

The Georgia Supreme Court held that where the separation agreement "completely, clearly, and unambiguously expresses the intent of the parties that the beneficiary spouse is releasing any and all interest in the benefits at the time of divorce ... [the agreement] operates as a complete waiver of the Ex–Husband's beneficiary designation." *DeRyke v. Teets*, 288 Ga. 160, 702 S.E.2d 205, 207 (2010) (citations omitted).

In *Pinkard v. Confederation Life Insurance Co.*, 264 Neb. 312, 647 N.W.2d 85, 89–90 (2002), the Nebraska Supreme Court held: "If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect. We make no distinction among IRA's, life insurance proceeds, or other types of annuities that designate the beneficiary."

The Utah Supreme Court in *Estate of Anello v. McQueen*, 953 P.2d 1143, 1146 (Utah 1998) held: Property settlement agreement providing that " 'Plaintiff and Defendant are awarded their own separate IRA, as their individual and separate property, free and clear of any claim or interest of the other party'... clearly includes both existing property interests and future expectancies" overcoming the beneficiary designation within the IRA.

The Supreme Court of North Dakota in *Ridley v. Metropolitan Federal Bank FSB*, 544 N.W.2d 867, 868 (N.D.1996) held: "When the agreed divorce decree gave the bank accounts to Donald 'free of any interest' of Geraldine, the earlier contractual designations of survivorship rights to Geraldine were specifically nullified."

Reference is also made to Elizabeth Cazden, J.D., *Divorce Decree or Settlement Agreement as Affecting Divorced Spouse's Right to Recover as Named Beneficiary on Former Spouse's Individual Retirement Account*, 99 A.L.R.5th 637 (2002).