William Michael HASTE, Executor of the Estate of David Peck, Appellant

v.

The VANGUARD GROUP, INC; Herbert C. Moore, III; and Patricia B. Moore, Appellees

NO. 2014–CA–001992–MR

Court of Appeals of Kentucky.

RENDERED: JUNE 17, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court December 8, 2016

BRIEFS AND ORAL ARGUMENT FOR APPELLANT: Lee Van Horn, Lexington, Kentucky

BRIEF FOR APPELLEES: Lauren R. Nichols, Patricia B. Moore, Herbert C. Moore, III, Lexington, Kentucky

ORAL ARGUMENT FOR APPELLEES: Lauren R. Nichols, Lexington, Kentucky

BEFORE: COMBS, J. LAMBERT AND THOMPSON, JUDGES.

*OPINION*

THOMPSON, JUDGE:

William Michael Haste, Executor of the Estate of David Peck, appeals from a sum-

mary judgment of the Fayette Circuit Court concluding that Herbert Moore, III and Patricia B. Moore (the Moores) are the beneficiaries of an Individual Retirement Account (IRA) Dr. David Peck held with the Vanguard Group, Inc. Haste argues the circuit court erred by granting summary judgment because there is a material issue of fact regarding whether Dr. Peck did everything necessary to effect a beneficiary change and, therefore, substantially complied with the terms of the IRA agreement. We disagree.

In 1985, Dr. Peck executed a will leaving his estate to his wife, Patsy Peck, or her children, the Moores, if she predeceased him. He later designated Patsy as the primary beneficiary of his Vanguard IRA and the Moores as secondary beneficiaries to share equally if she predeceased them.

On March 13, 2000, Dr. Peck revised his estate plan with a will and revocable trust drafted by his attorney so that the Moores would be his probate heirs upon Patsy's death or if she predeceased them. Patsy died in 2008.

On April 3, 2011, Dr. Peck went online and logged into his Vanguard account and changed the primary beneficiary of his Vanguard IRA from his wife to "my descendants who survive me, *per stirpes.*" Dr. Peck did not alter his secondary beneficiary designation and, therefore, the Moores remained specifically designated as the IRA's secondary beneficiaries.

On April 12, 2011, Dr. Peck contacted a Vanguard representative by telephone to discuss the designation. The telephone conversation was recorded. The pertinent parts of that conversation are as follows:

Peck: Um, this is about my beneficiaries, and I've been trying to do this by, um, email, by the internet, and it's not-don't seem to be working too good.

Vanguard Representative (VR): Okay. Well, what is it that you're trying to do, Mr. Peck?

Peck: First off, my primary beneficiary was my wife who died in November of '08.

VR: Okay.

Peck: Then my secondaries were my two stepchildren, and I want each of them to get fifty percent. What I did was put the new to descendants who survive me *per stirpes.*

VR: Right.

Peck: And no spouse and allocation a hundred percent.

VR: Okay.

Peck: Now, my understanding is that means all of my IRAs will be split fifty percent between my two stepchildren. Is that correct?

VR: Well, you have a traditional IRA at Vanguard. Uh, that's the only IRA-and you are correct in stating that. Correct, yes sir.

After discussing Dr. Peck's beneficiary designation on the traditional IRA account, the conversation then turned to his non-IRA account:

Peck: Okay. Now, the problem is with my *non-IRA account.* It only allows me to name one beneficiary, then if that one dies, a secondary beneficiary and I want to the—split that fifty/fifty with my stepchildren also. (emphasis added).

VR: Okay. Um, with the transfer on death plan you are correct that I don't believe it allows you to do *per stirpes.* Uh. Let me take a look at that plan here real quick. Now, on your individual account, sir, let me just ask you a quick question. Do you have a will in place?

Peck: Yes, I do.

VR: Okay. And within-the reason why I'm asking is that with our transfer on death plan, if you do have a will already

in place, there may not be a need for the transfer on death plan because, um, if you do keep it consistent with what the will is saying-so if you have your will stating that if you would pass away that the assets are going to go to your descendants or to your stepchildren equally-

Peck: Right.

VR:-there's no, there's no, uh, need necessarily for a transfer on death plan, um, because what the transfer on death plan does is it helps folks that don't have an estate plan in place.

Peck: Okay. What I was –(clears throat)-what I was given to understand from my internet communications was, uh, that the, uh, internet thing overrode my will.

VR: It, it will. Yes, that's true, but that's why I said if it's going to be consistent with what's in your will then there's no need for it. But if you want something other than what's in your will then you can add it. It's going to supersede whatever your will says.

The Vanguard representative further informed Dr. Peck that Vanguard would "transfer the [IRA] assets directly from [Dr. Peck's] existing IRA into [the beneficiaries'] names based on what [Dr. Peck] directed [Vanguard] to do."

After the 2011 change in beneficiary designation, Dr. Peck did not change his beneficiary designation form. At least once a year, Vanguard sent Dr. Peck a "Beneficiary Verification" which designated the Moores as secondary beneficiaries. Each letter stated as follows: "It's important that we have accurate information, because your beneficiary designations generally determine who inherits these accounts and may supersede the information in your will or trust." The letter further informed Dr. Peck that if the beneficiaries listed—the Moores—were correct, he did not need to take any action. Dr. Peck was instructed that if he desired to change his beneficiaries, he could do so by logging on to his internet account or calling a Vanguard representative.

Sometime after changing his beneficiary designation in 2011 and his death in 2013, Dr. Peck and the Moores had a disagreement and their relationship deteriorated. Also, between 2011 and 2013, Dr. Peck executed several wills.

On August 9, 2011, Dr. Peck executed a will leaving his entire probate estate to Haste, Ayla Haste and a friend, Willie Ray. He made a residuary provision for the Aviation Museum of Kentucky and the Lexington Model Airplane Club. There was no provision in the will for the Moores.

Later that same year, Dr. Peck executed another will leaving his entire estate to Ray and, if he predeceased Dr. Peck, to Ray's wife and their daughter. Again, he made no provision for the Moores. Haste alleges that after executing the will, Dr. Peck told him his estate planning could make Ray a "millionaire with the stroke of a pen."

Dr. Peck's last will executed in June 2012, left one-hundred percent of his estate to Haste. If Haste did not survive, the estate was left to Libby Mattingly. Again, no provision was made for the Moores. At some time after executing his final will, Dr. Peck purportedly told Haste that he would receive "everything."

When Dr. Peck died, his June 2012 will was in effect as was his April 2011 IRA beneficiary designation. Dr. Peck died without having children. As stated long ago in *Tichenor v. Brewer's Ex'r.*, 98 Ky. 349, 33 S.W. 86, 87 (1895), and quoting various authors, the meaning of the word "descendant" means those who descend "as offspring, however remotely[.]" Be-

cause Dr. Peck did not have any descendants, the Vanguard IRA primary designation failed and the Moores claimed the beneficial interest of the IRA as secondary beneficiaries.

After his appointment as executor of Dr. Peck's will, Haste filed this action alleging that Dr. Peck believed he had changed the beneficiary of the IRA by changing his will. Haste argued Dr. Peck substantially complied with the beneficiary change requirements in the Vanguard IRA contract, and, therefore, the IRA should be distributed in accordance with the provisions of the will making him the sole beneficiary. He pointed to the changes in estate planning and statements allegedly made to the effect he would make Ray a millionaire and, later, that Haste would get "everything." He pointed out that the estate was valued at well under one million dollars in contrast to the over one million dollar value of the IRA. Haste also pointed to the deposition testimony of the attorney who drafted Haste's wills stating that he would be surprised to learn that Dr. Peck intended that his non-probate assets would be disposed of differently than his probate estate.

The circuit court disagreed that there was a material issue of fact and granted summary judgment in favor of the Moores. Haste appealed.

When reviewing the grant of a summary judgment, the question is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991). "Because summary judg-

ment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky. App. 2001).

It is undisputed that after 2011, Dr. Peck did not attempt to change the designated beneficiaries of the Vanguard IRA as required by the IRA contract by use of the form provided by Vanguard or as instructed in the yearly letters he received. Haste argues that despite the written designation and the contractual terms, the evidence of Dr. Peck's intent to change the beneficiaries is sufficient to create a material issue of fact under the doctrine of substantial compliance. We believe Haste's interpretation of the doctrine extends it well beyond its bounds.

The substantial compliance doctrine has commonly been applied when the only question concerns the identity of a beneficiary under a life insurance policy. In those cases, the dispute is not between the contracting parties but is a dispute as "to whom the insured intended to make a gift by way of insuring his life for same." *Bosse v. Bosse,* 248 Ky. 11, 57 S.W.2d 995, 996 (1933). In such cases, the doctrine of substantial compliance has long been recognized in Kentucky. Despite the policy terms, "strict compliance with the policy provisions is not necessary in order to effect a change of beneficiary. Substantial compliance has been deemed sufficient[.]" *Mims v. Western–Southern Agency, Inc.,* 226 S.W.3d 833, 835 (Ky. App. 2007). Kentucky has been said to take a liberal view in applying the doctrine. *Vaughn v. Baker,* 438 S.W.2d 517, 519 (Ky. 1969).

In *Hill v. Union Central Life Ins. Co.,* 513 S.W.2d 808, 808–09 (Ky. 1974) (quotations omitted), the Court noted it has long been the rule in this jurisdiction that substantial compliance is deemed sufficient

"when the insured had done all he could do under the circumstances; all he believed necessary to effect the change or what the ordinary layman would believe was all that was necessary to accomplish the change." Citing a line of Kentucky cases, the *Hill* Court observed that in cases where the standard for substantial compliance had been met, the critical fact was "the substantial compliance sufficient to effect the change was out of the hands of the insured and directed to the insurance company." *Id.* at 809. While Kentucky takes a liberal view of compliance with the policy's change of beneficiary requirements, the Court declined to enlarge the doctrine where the insured had not taken any steps toward directing the insurance company to have the beneficiary changed. *Id.*

Although in its infancy the doctrine was applied to life insurance beneficiary designations, the substantial compliance doctrine has also been applied in other contexts, including annuities. In *Hart v. Hart*, 201 S.W.3d 457 (Ky. 2006), Duane Hart purchased an annuity from Hartford Life Insurance Company and designated his wife as the beneficiary. The annuity contract provided that a change of beneficiary could only be made by providing written notice to the company. Duane later contacted his insurance agent regarding changing the beneficiary who sent the appropriate change-of-beneficiary forms and instructed Duane to complete the forms and return them in an included self-addressed stamped envelope. The forms were never returned and there was no further written communication regarding changing the beneficiary. After Duane's death, the unmailed beneficiary change forms purporting to change the beneficiary were found.

Although analyzing the facts under the substantial compliance doctrine, the Court held the compliance in that case was insuf-ficient where the ability to change the beneficiary remained in the owner's hands. *Id.* at 460. The Court observed that "the instructions and self-addressed, stamped envelope accompanying the forms were relevant to show that Duane had some minimal awareness of the procedures typically used to effect a change of beneficiary." *Id.*

We recognize there is a difference between an IRA and a life insurance policy in that the *res* that transfers on the death of the IRA account owner was owned during his or her lifetime but the proceeds of a life insurance policy do not exist until the insured's death. *Sadler v. Buskirk*, 478 S.W.3d 379, 382 (Ky. 2015). In *Sadler*, the Court relied on that distinction to hold that the parties' marital separation agreement prevailed over the IRA beneficiary designation. *Id.* at 383. Yet, there are similarities determinative of the question as to whether substantial compliance is sufficient to change a designated beneficiary.

Life insurance policies, annuities and IRAs are similar in the respect that all arise from contractual relationships where one party agrees, "for valuable consideration ... to pay a sum of money on specified contingency to a designated person called a beneficiary." *Ping v. Denton*, 562 S.W.2d 314, 316 (Ky. 1978). In those instances, the proceeds pass automatically to the beneficiary. However, during the life of the owner, the beneficiary's interest is revocable by the owner and contingent on the beneficiary being designated as such when the owner dies. *Sadler*, 478 S.W.3d at 382 n. 2.

Here, the question is not whether a subsequent separation agreement between the IRA owner and the IRA's designated beneficiary prevails, but whether substantial compliance with the IRA's contractual terms regarding changing the beneficiary is sufficient. Thus, the difference noted by

the Court in *Sadler* has no consequence to our decision. We see no logical reason why the substantial compliance doctrine should not be applicable to our present analysis. The remaining issue is whether Haste has alleged facts sufficient that, if proven, would meet the standard for substantial compliance.

An unexecuted intention is not sufficient to change a beneficiary. *Spurlock v. Spurlock*, 271 Ky. 70, 111 S.W.2d 443, 444 (1937). There must have been a "genuine, bona fide attempt of a substantial nature to have the beneficiary changed[.]" *Vaughn*, 438 S.W.2d at 519. For there to be substantial compliance with the IRA's terms, Dr. Peck must have taken some affirmative action toward directing Vanguard to change the beneficiary. *Hill*, 513 S.W.2d at 809.

Dr. Peck's alleged remarks to Haste that he could make Ray a millionaire and that Haste would get "everything" do nothing to support Haste's arguments. Even if Dr. Peck intended such results or believed such to be true, the statements were not made to a Vanguard representative nor did Dr. Peck direct Vanguard to take any action to carry out that intent or belief. Likewise, the attorney's belief that Dr. Peck intended that his probate and non-probate assets be distributed the same does not negate the undisputed evidence that after 2011, Dr. Peck did not attempt to change the beneficiaries of his Vanguard IRA.

Dr. Peck's actions demonstrate that not only was he aware of the significance of a beneficiary designation but also the difference between testamentary and non-testamentary beneficiaries and acted upon that knowledge. Notably, he had an IRA and an estate plan in place and, after his wife's death, changed the primary beneficiary by using an online form. Dr. Peck received yearly letters from Vanguard verifying his beneficiary designation, including the Moores as secondary beneficiaries, and was advised as to the requirements to change his designation. Yet, he never attempted to change the Moores as beneficiaries.

Additionally, we simply find no rational basis for Haste's interpretation of the conversation between Dr. Peck and the Vanguard representative. The Vanguard representative did not, as Haste contends, inform Dr. Peck that his will would supersede the beneficiary designation on the Vanguard IRA. When read in proper context, the conversation reveals that the Vanguard representative informed him just the opposite.

The initial conversation regarding his traditional IRA reveals Dr. Peck confirmed he understood and intended that the IRA would be divided equally between the Moores. After that, the conversation turned to his *non-IRA account* and he was informed that if he desired its assets to be as designated in a testamentary document, a transfer on death plan was not needed. Specifically, Dr. Peck was informed that if he wanted a beneficiary other than stated in his will, he could designate a beneficiary to the IRA and it would "supersede whatever [his] will [said]." The conversation demonstrates that Dr. Peck was informed that a specific beneficiary designation would not be superseded by any testamentary disposition.

The fact that Dr. Peck executed a later will that did not include the Moores as beneficiaries of his probate estate is not significant. Under Kentucky Revised Statutes 391.360, an IRA is a non-testamentary asset that cannot be distributed through probate in accordance with a will. In *Kelly v. Kelly*, No. 2006–CA–002103–

MR, 2007 WL 3122276 (Ky. App. 2007),[1] we addressed a similar argument that a will was evidence of substantial compliance with the formalities of changing an IRA's designated beneficiary. We rejected the notion stating as follows:

> The enumerated provision of [the] will expressing a generalized wish or preference was not a sufficient manifestation of his intent to comply with company procedures in changing the beneficiary designation on the insurance policy. A will does not pre-empt the contractual relationship between an insured and his insurer as to the procedures governing a change in beneficiary of an insurance policy. A will is not a substitute for execution of a change of beneficiary form (or at least with substantial compliance in undertaking that change).

*Id.* at *2.

There is no evidence that Dr. Peck had "done all he could do under the circumstances; all he believed was necessary to effect the change or what the ordinary layman would believe was all that was necessary to accomplish the change." *Hill,* 513 S.W.2d at 808–09 (quotations omitted). Unlike the cases where substantial compliance has been deemed sufficient, at the time of his death, Dr. Peck had taken no action to direct that Vanguard change the designated beneficiaries of his IRA. Because there is no material issue of fact, summary judgment was appropriate.

Based on the foregoing, the summary judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

---

1. We cite this unpublished case pursuant to Kentucky Rules of Civil Procedure 76.28(4)(c).