RENDERED: DECEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0547-MR

DENNIS L. THOMAS                                                    APPELLANT


APPEAL FROM JEFFERSON FAMILY COURT
v.         HONORABLE TARA HAGERTY, JUDGE
ACTION NO. 17-CI-500876


DEBORAH A. THOMAS                                                    APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; K. THOMPSON AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Dennis L. Thomas appeals from an order of the

Jefferson Family Court requiring him to obtain additional life insurance to cover

the full balance of his maintenance obligation. We reverse and remand because the

family court misinterpreted the parties' settlement agreement and Dennis's

obligations pursuant to it.

Dennis and Deborah A. Thomas married in 1984. In March 2017, Deborah filed a petition for dissolution. She requested maintenance based on the long length of the marriage, her role in raising their now-adult children, and the great disparity in their incomes.

In November 2017, pursuant to mediation, Dennis and Deborah entered into a marital settlement agreement which was incorporated into the decree of dissolution. As to maintenance, Dennis agreed to pay Deborah $5,000.00 each month for a period of ten years plus $3,000.00 two times a year based on Dennis's bonuses with Dennis's obligation to pay maintenance terminating upon the death of either party or Deborah's cohabitation. The agreement further specified:

> Dennis has a life insurance policy through the Kentucky Society of CPAs. He shall make Deborah beneficiary for the balance of the maintenance to the date of termination of maintenance, to the maximum benefit amount. He shall provide proof of coverage to Deborah by January 31 each year.

In February 2018, Deborah filed a motion to hold Dennis in contempt for failing to provide proof of life insurance in an amount sufficient to pay for the balance of his maintenance, explaining in an affidavit that Deborah was only made the beneficiary of a $170,000.00 policy. Dennis responded that he complied with his obligation of making Deborah the beneficiary of the maximum benefit of his life insurance policy through the Kentucky Society of CPAs.

In March 2018, the family court ordered Dennis to file proof of the maximum benefit available to him for life insurance coverage through the Kentucky Society of CPAs. Dennis responded with a letter from National Insurance Agency which provided: "Your Kentucky Society CPAs Life Insurance Plan Policy is in force with coverage in the amount of $170,000.00. The maximum death benefit on the policy listed above is $170,000.00." Deborah responded, challenging Dennis's assertion that he could not receive higher coverage through the Kentucky Society of CPAs, explaining she contacted the National Insurance Agency that provides the policy and learned Dennis could increase the amount of coverage up to the $660,000.00 amount by filling out an application to allow for this coverage.

In July 2018, Deborah renoticed her motion to require Dennis to provide sufficient insurance. The family court set a contempt hearing. Deborah provided an application for term life insurance through the Kentucky Society of CPAs which provided that a ten-year term life policy for an insured under age sixty-five is available for $1,000,000.00 of coverage, and an annual renewable term policy is available for an insured under age seventy-five for up to $2,000,000.00.

On December 10, 2018, the family court held the contempt hearing and Deborah and Dennis testified. Deborah testified she understood the settlement

agreement to require Dennis to obtain life insurance coverage naming her as the beneficiary, commiserate with the amount of maintenance remaining due her. Therefore, Dennis was to obtain a $660,000.00 policy at the outset which could decline as the balance of the total due her declined.

Dennis testified he understood that his obligation pursuant to the settlement agreement was to maintain the same amount of coverage that he had under his *then-existing* Kentucky Society of CPAs life insurance policy in effect at the time of the property settlement agreement. Dennis testified he had had the Kentucky Society of CPAs life insurance policy since 1990 when he became a CPA; it started out at $120,000.00 and through no act of his own it increased to $145,000.00 in 2015 and $170,000.00 in 2017. He explained that the $170,000.00 amount to which Deborah was a beneficiary was the maximum benefit for the then-existing policy, and it was his understanding that to obtain additional coverage he would have to apply for a new policy. Dennis testified that because he has a fatty liver and is prediabetic, he feared he would have trouble getting a new policy and any policy he could get would be more expensive.

On February 25, 2019, the family court ruled as follows:

> Although Dennis argues that he agreed to maintain his long-standing life insurance policy with Kentucky Society of CPAs, not to increase the amount of coverage, the language of the parties' agreement clearly ties the amount of insurance required to the balance of Deborah's maintenance award.

The Court being sufficiently advised, **IT IS HEREBY ORDERED** that Dennis shall obtain additional life insurance to cover the full amount of Deborah's maintenance award. He may increase the coverage under his policy with the Kentucky Society of CPAs, if possible, or purchase additional insurance from another company. He shall provide proof of coverage to Deborah within thirty days of this Order and by January 31 of each year thereafter. Dennis may reduce the amount of the life insurance policy over time as he pays maintenance to Deborah. His obligation to maintain the life insurance policy with Deborah as a beneficiary shall terminate when he has paid the full amount of maintenance owed to her.

The family court declined to find Dennis in contempt and included finality language.

Dennis filed a timely motion to alter, amend, or vacate which the family court denied. He then appealed.

"[J]udicial review of a property settlement agreement to determine its meaning is simply a matter of contract interpretation." *Sadler v. Buskirk*, 478 S.W.3d 379, 382 (Ky. 2015). *See* Kentucky Revised Statutes (KRS) 403.180(5). "When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions." *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (citation omitted). "The fact that one party may have intended different results . . . is insufficient to construe a contract at variance with its plain and unambiguous terms." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d

381, 385 (Ky.App. 2002). We review the family court's interpretation of the parties' settlement agreement *de novo*. *Sadler*, 478 S.W.3d at 382.

Important to our decision about how to interpret the settlement agreement's provisions on maintenance is KRS 403.250(2), which provides: "Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party[.]" In interpreting this statute, our Courts have clarified that a provision awarding an amount certain of maintenance over a given number of years in either the settlement agreement or the decree does not extend the obligation to pay future maintenance after the obligor dies; in the absence of a clear statement providing that the maintenance obligation continues past the obligor's death, it will terminate at his death as no inference of continuation will be inferred. *Messer v. Messer*, 134 S.W.3d 570, 572-73 (Ky. 2004); *Weldon v. Weldon*, 957 S.W.2d 283, 286 (Ky.App. 1997).

The reference to Dennis's existing life insurance policy through the Kentucky Society of CPAs is not in dispute. What is in dispute is the meaning of the following sentence: "[Dennis] shall make Deborah beneficiary for the balance of the maintenance to the date of termination of maintenance, to the maximum benefit amount."

Dennis argues that the settlement agreement does not require that he increase his existing Kentucky Society of CPAs life insurance policy to $660,000.00 or obtain another life insurance policy. He interprets the language regarding "to the maximum benefit amount" as referring back to the maximum benefit amount in his then-existing Kentucky Society of CPAs life insurance policy. He argues this wording is unambiguous and that the family court impermissibly added language to the settlement agreement by requiring him to either obtain additional life insurance on his Kentucky Society of CPAs life insurance policy or purchase additional insurance from another company. He argues when he made Deborah the beneficiary of the $170,000.00 policy, she received the benefit of the bargain and the settlement agreement must be strictly enforced.

Deborah also argues that the settlement agreement is unambiguous. She focuses on the language that she would be the "beneficiary for the balance of the maintenance to the date of termination of maintenance" and agrees with the family court's ruling.

We agree with Dennis that the language regarding "the maximum benefit amount" refers to the maximum benefit amount in his then-existing Kentucky Society of CPAs life insurance policy. Deborah had no automatic right to receive any outstanding maintenance should Dennis predecease her before he

finished paying her maintenance for the ten-year term the parties agreed upon, and we will not imply such an obligation from the wording of this settlement agreement. Indeed, the settlement agreement provided that the maintenance obligation would terminate with the death of either party.

If Deborah wanted to be guaranteed the full balance of the maintenance due her in the event Dennis dies before paying maintenance to her for those ten years, she needed to negotiate to have the settlement agreement explicitly extend this obligation past his death. Had such a provision been in place, supporting this obligation with a life insurance policy to cover the balance of the maintenance obligation due her would have made sense to ensure she would, in fact, receive such maintenance in the event of Dennis predeceasing her before the ten years of maintenance was paid. Alternatively, the same result could have been obtained by explicitly stating that Dennis would obtain life insurance which would cover the entire outstanding amount of maintenance due Deborah, starting with a policy of at least $660,000.00, which could be decreased as his obligation was reduced.

The family court erred in its determination that Dennis's agreement to make Deborah the beneficiary of his Kentucky Society of CPAs life insurance policy meant that she was entitled to make him obtain life insurance to cover the entire balance of maintenance due, essentially making his maintenance obligation

survive his death.  Such an obligation is at odds with the wording of the settlement agreement and KRS 403.250(2).

Accordingly, we reverse and remand the Jefferson Family Court's order requiring Dennis to obtain additional life insurance as Dennis has fully satisfied the requirements of the settlement agreement as incorporated into the decree.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Sandra B. Hammond
Sandra F. Keene
Louisville, Kentucky

BRIEF FOR APPELLEE:

Harold L. Storment
Louisville, Kentucky