Manning v. Ancient Order of United Workmen.

CASE 20—PETITION ORDINARY—OCTOBER 6.

# Manning v. Ancient Order of United Workmen.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

BENEFIT SOCIETIES—CHANGE OF BENEFICIARY.—A provision in the char-
ter of a benefit society to the effect that a new direction as to the
payment of a beneficiary certificate shall be valid only when made in
a certain way, is for the protection of the society, and does not govern
as between claimants to the benefit.   Therefore, if the society
chooses to waive the failure to comply with that provision and pay
the fund to the new beneficiary named, it may do so, although the
change of beneficiary was not made as required by the charter.

RICHARDS & HINES FOR APPELLANT.

When the benefit certificate was issued appellant's right to the fund
named therein was *vested*, and could not be divested except in the
mode pointed out in the charter.   (Ky. M. M. Life Ins. Co. v. Miller,
13 Bush, 494; Weisert v. Muehl, 5 Ky. Law Rep., 288; Vollman's
Appeal, 92 Pa. St., 52; Hellenberg v. Dist. No. 1 of I. O. B. B., 94
N. Y., 584; 101 Pa. St., 111; Eastman v. Prov. M. R. Asso., 20 Cent.
Law J., 266.)
      And even if the appellee ever had the right to waive a compliance
with the charter provision, it could not do so after the death of the
insured, as appellant's rights were then *fixed*.

GUY C. SIBLEY OF COUNSEL ON SAME SIDE.

B. F. CAMP FOR APPELLEE.

The appellee had the right to waive a strict compliance with its char-
ter provision as to the manner of changing the beneficiary, and to
pay to whomsoever the insured directed, whether the direction was
in the mode pointed out by the charter or not.   (Swift v. R. R. Con-
ductors' Union, 96 Ill., 309; Splan v. Chew, 60 Texas, 532; Bank of
America v. McNeil, 10 Bush, 54; Durian v. The Central Verien of
the Hermon Sons, 7 Daley (N. Y.), 168; Ballou v. Gile, Adm'r, 50
Wis., 614.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, The Ancient order of United Workmen,
issued to Robert K. Manning, through its Supreme

Lodge, on January 13, 1879, a certificate of membership as a master workman, entitling him to an interest in its beneficiary fund to the extent of two thousand dollars, it, by the terms of the certificate, to be paid at his death to his brother, the appellant, Delly J. Manning.

By the regulations of the order this insurance was obtained through the subordinate lodge. The certificate was sent to it for the insured, but for some reason not disclosed by the record he left it in its charge. He was then unmarried, but remained so but a short time, and before June 5, 1879, united his fortune in life with that of Josie A. Brown. At the date last named, and when living distant from his subordinate lodge, he wrote to one of its officers, known as its "financier," as follows:

"Please find inclosed my dues of lodge No. 2, A. O. U. W., three dollars, and in return please send my policy made out to Mrs. Josie A. Manning, and oblige, very respectfully, etc.,          R. K. MANNING."

He was killed on July 25, 1879.

The law of the order provides: "Any member holding a beneficiary certificate, desiring at any time to make a new direction as to its payment, may do so by authorizing such change in writing on the back of his certificate in the form prescribed (see form No. 6), attested by the Recorder, with the seal of the lodge attached, and by the payment to the supreme or grand lodge of the sum of fifty cents; but no change of direction shall be valid or have any binding force or effect until said change shall have been reported to the Supreme or Grand Recorder, the old certificate, if practi-

cable, filed with him, and a new beneficiary certificate issued thereon; and the said new beneficiary certificate shall be numbered the same as the old certificate."

The above quoted letter was referred by "the financier" of the lodge to its recorder; and the fee of fifty cents above named not having been forwarded by the insured with the direction to change the beneficiary in his policy, the last named officer wrote to him, requesting him to furnish it. His death probably prevented his doing so. In any event it was not done, and nothing further appears to have been done in the matter prior to Manning's death. After it occurred the recorder of the subordinate lodge certified the letter to the grand lodge of the State of Kansas, it then having power to issue beneficiary certificates, with an indorsement of its genuineness; and it issued a new certificate payable to Josie A. Manning. It is dated July 10, 1879, and countersigned July 12, 1879; but in fact it was not issued until after Manning's death, and on September 16, 1879. Shortly afterward the benefit was paid to the widow. The appellee now sues for the fund, claiming that it was paid to the widow without authority, and that in point of fact no change in the beneficiary was ever made.

It is shown that the appellee paid the insurance to the widow shortly after the issual of the new certificate. It evidently did so in good faith, and without any notice of any claim to it by the appellant.

It is evident that the prime object of the beneficiary feature of the order is to aid the family of the assured. The claim of the widow should not, therefore, be viewed with disfavor. He may, however, direct the benefit to be paid to any person whom he may name.

The appellee's charter says: "Such beneficiary fund as the corporation may deem suitable and proper may be set apart and provided to be paid over to the families of deceased members or to such persons as such deceased members may, while living, direct."

It is a rule of the law of insurance that when a policy is issued the right to the benefit at once vests in the beneficiary. The person procuring the insurance has subsequently no power over it. The policy and the money to be paid upon it belong the moment it is issued to the person named in it as the beneficiary. This rule, in the absence of any thing in their charters, applies to mutual benefit associations like the appellee. (Weisert, &c., v. Muehl, 81 Ky., 336.)

The organic law of the appellee, however, allows the assured to change the direction of the benefit. The only question presented, therefore, is whether the letter *supra* so operated.

The appellant had but a contingent right to the benefit—not a vested and absolute one. It was subject to be defeated at the will of the assured. The law of the order, above cited, provides how this shall be done. The regulation is a reasonable one, but the question arises whether it shall govern as between claimants to the benefit, if the order has seen fit to waive it. We think not. Its object beyond doubt was to prevent the appellee from becoming involved in litigation with outside claimants. Upon this idea it was held in the case of the National Mutual Aid Society v. Lupold, 101 Pa. St., 111, where the certificate provided, "this certificate may be assigned and transferred only by and with the consent of the association indorsed thereon,"

and it was done without such approval, that it was a part of the contract, and *the society* had a right to insist upon the protection which it 'was intended to afford.

The direction by the insured to change the benefit was, in the case now under consideration, given through the proper channel. The subordinate lodge referred it to the proper authority, and it saw fit to waive the regulations intended for its benefit, and comply with the direction, although made in an informal manner and without the payment of the fee. The *intention* of the assured was to change the benefit. He so directed in writing ; and now, because he did not do' so in the formal manner prescribed by the law for the benefit of the order, it is asked by a third party, whose interest in the insurance was liable to end at any time at the will of the assured, that his intention shall be defeated, although the party for whose benefit the form was prescribed has seen proper to waive it. Such a rule would sacrifice substantial justice to mere form. It would tend to defeat the benevolent aim and purpose of the organization, and the desire and intention of the assured.

Members of the order may be remote from their lodge ; they may not have their certificates with them, and, therefore, be unable to make the indorsement thereon as directed, or to have it attested by the recorder of their lodge or its seal attached thereto. If the appellee chooses to waive these formalities, it does not lie in the mouth of a third party to complain. The order is entitled to know who is entitled to the benefit fund ; and the formal mode of changing its

direction is for its benefit; while, upon the other hand, the right of the beneficiary rests in the mere will of the assured.

It has been repeatedly held that a transfer of the stock of a corporation is valid as to the parties to the transfer, although not made upon the books of the corporation as required by its charter or by-laws, provided it be done in any mode known to the law for the transfer of like personal property.

In our opinion the letter of June 5, 1879, operated to change the direction of the benefit, inasmuch as the appellee saw fit to waive its informality; and as the assured had therefore done all that was needed on his part, the fact that the appellee issued the new certificate after his death does not affect the right of the parties.

If the appellee were in court with the fund asking that the conflicting rights of claimants to it be determined, and was silent as to the informality of the direction to change the benefit, it seems to us that the widow ought to prevail.

Judgment affirmed.