Barbara Ann HART, Appellant,

v.

Christopher HART; and Toni Gail Carloftis, Appellees.

No. 2004–SC–000505–DG.

Supreme Court of Kentucky.

June 15, 2006.

Rehearing Denied Oct. 19, 2006.

Marcia A. Smith, Corbin, Counsel for Appellant.

Howard Oliver Mann, Stephen Greene Hopkins, Corbin, Counsel for Appellees.

ROACH, Justice.

## I. INTRODUCTION

This is an appeal of a summary judgment entered in favor of Christopher Hart and Toni Gail Carloftis, Appellees, and against Barbara Ann Hart, Appellant. The parties each claim that they are the

designated beneficiaries under an annuity contract purchased by Duane Hart, Appellees' father and Appellant's husband, who is now deceased. The Whitley County Circuit Court issued its ruling pursuant to cross-motions for summary judgment from the parties and the Court of Appeals affirmed. We granted Appellant's motion for discretionary review and now reverse.

## II. BACKGROUND

The underlying facts in this case are not in dispute. Appellant married Duane Hart in 1993. Appellees are Duane's children from a previous marriage. Duane was a successful businessman in Corbin. In February, 1995, Duane purchased an annuity investment product from the Hartford Life Insurance Company, initially investing $5,000 and designating Appellant as the sole beneficiary. Over the next several years, he paid over $70,000 in premiums to the account, making the last contribution in June 1997.

Sometime that same year, Duane contacted his insurance agent Lynn Hammack, an employee of Edward D. Jones & Co., regarding his Hartford account. Duane told Hammack that he was having marital problems and was considering changing the designated beneficiary on his annuity. Shortly thereafter, Hammack sent Duane the appropriate change-of-beneficiary forms. Affixed to the forms was a note written by Hammack's office administrator and directing Duane to "Please fill in correct info. Sign & return forms." A self-addressed, stamped envelope was included so that the forms could be easily returned to Hammack. Despite Duane's request for the forms, Hammack stated that she "never received back any change of beneficiary forms nor any other type of written notice from [Duane] indicating that he wanted to change his beneficiary."

Duane's contract with Hartford included a multiple paragraph section addressing the designation of a beneficiary and the manner in which a change could be made. The contract provided, in pertinent part:

> The Designated Beneficiary will remain in effect until changed by the Contract Owner. Changes in the Designated Beneficiary may be made during the lifetime of the Annuitant by written notice to the Administrative Office of the Company.... Upon receipt of such notice ... at the Administrative Office of the Company, the new designation will take effect as of the date the notice is signed, whether or not the Annuitant or Contract Owner is alive at the time of receipt of such notice.

Additionally, in December 1999, Duane transferred the management of his Hartford annuity account from Hammack to his son Christopher, who was also an Edward D. Jones investment broker. Christopher acknowledged that his father gave him no indication that he had intended any change to the designation of his wife Barbara as sole beneficiary on the annuity.

On September 14, 2000, Duane was shot and killed on the front porch of his home while leaving for work. After Duane's death, Christopher discovered the unmailed beneficiary and annuity change forms at Duane's business office while sorting through his father's papers. The forms, which purported to change the beneficiary on the annuity from Appellant to Appellees, appeared to have been signed by Duane and were dated July 7, 1997. Christopher took the forms to the lawyer for his father's estate, who, in turn, mailed the forms to Hartford. Hartford acknowledged receiving the forms, but assumes no position as to the outcome of this case or as to who is the proper beneficiary on the account. At the time of Duane's death,

the annuity account was worth approximately $180,000.

Appellees filed suit in January 2001, claiming that, as designated beneficiaries, they were entitled to the proceeds from the annuity contract. The parties filed cross motions for summary judgment. The trial court granted summary judgment in Appellees' favor and the Court of Appeals affirmed that decision. We granted Appellant's motion for discretionary review.

### III.  ANALYSIS

█ Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 482 (Ky.1991). Although Appellant insists that she has never conceded that the signatures appearing on the forms in question actually belonged to her husband, she has produced no countervailing evidence suggesting that he did not sign the forms. In fact, she has acknowledged that the handwriting on the forms appears to be that of her late husband. She also stated repeatedly, in her motion for summary judgment and supporting memoranda, that the material facts were undisputed by the parties. Accordingly, we conclude that there exist no genuine issues of material fact and that summary judgment is appropriate in this case.

█ The sole question to be answered in this case is who, among Appellant and Appellees, is the designated beneficiary on the Hartford annuity. The Court of Appeals concluded that in filling out and signing the beneficiary change forms that had been provided by Hammack, Duane had substantially complied with the terms of his contract and Appellees were the proper beneficiaries of the annuity. We disagree with that conclusion.

Among the cases cited by the parties and discussed by the Court of Appeals is *Hill v. Union Central Life Insurance, Co.,* 513 S.W.2d 808 (Ky.1974), which we believe is dispositive of the case at hand. In *Hill,* our predecessor court rejected an insured's attempt to change the beneficiaries on two separate policies of life insurance. The pertinent facts were set forth as follows:

> Shortly before his death, Clarence A. Dawson directed his secretary to make the following endorsement on each of the policies:
>
> > "Insurance on said policy paid back to my estate.  This the 5th day of February, 1971."
>
> Clarence Dawson affixed his signature immediately beneath each endorsement. The policies were then returned to his safe-deposit box where they remained until his death.
>
> Both policies provided a mode for changing the beneficiary; one "said change to take effect when endorsed on the policy by the insured and the company"; the other "by written notice to the company at the home office, for which a form will be furnished on request".
>
> Several years prior to 1971. Clarence Dawson had in the form and manner provided in the policies, changed the beneficiary in each policy so as to make the appellant, William C. Hill, a nephew, the beneficiary of each policy.

*Hill,* 513 S.W.2d at 808. Citing a number of cases, the Court noted that Kentucky had long

> adhered to the view that a substantial compliance with the formalities or terms of the provisions in the policy as to change of beneficiary is sufficient. . . . the substantial compliance deemed sufficient has been when the insured had done all he could do under the circum-

stances; all he believed necessary to effect the change or what the ordinary layman would believe was all that was necessary to accomplish the change.

In each instance the substantial compliance sufficient to effect the change was out of the hands of the insured and directed to the insurance company.

*Hill*, 513 S.W.2d at 808–09 (internal citations and quotation marks omitted). The Court held that Dawson had not substantially complied with the terms of either policy in attempting to change beneficiaries, noting that he understood the steps necessary to effect such a change having recently completed the task. The Court explained its reasoning, stating, "By keeping the policies in a lock box, [Dawson] directed no effort at all toward the insurance company. We are unwilling to further enlarge the rule as to substantial compliance." *Id.* at 809.

As noted above, Duane's annuity contract with Hartford stated, "Changes in the Designated Beneficiary may be made during the lifetime of the Annuitant by written notice to the Administrative Office of the Company." This provision is essentially the same as that provided in the second insurance contract in *Hill*, where the beneficiary could be changed "by written notice to the company at the home office, for which a form will be furnished on request." *Id.* at 808. In *Hill*, the altered policies were placed in a safe-deposit box. Here the change request forms were stored in Duane's office desk and remained undelivered in the nearly three years between his signing the forms and his death. In both cases, there is an absence of any proof that the insured intended his written notice of a change in beneficiary to be delivered to the company.

In any case, *Hill* ends the inquiry. Substantial compliance has been deemed sufficient "when the insured had done all he could do under the circumstances; all he believed necessary to effect the change or what the ordinary layman would believe was all that was necessary to accomplish the change." *Id.* at 808–09 (internal quotation marks omitted). Duane's actions in this case far fall below that standard. Moreover, there is simply no way to characterize Duane's actions to effect the change as being "out of the hands of the insured and directed to the insurance company." *Id.* at 809. Thus, we cannot conclude that he substantially complied with the terms of the contract.

The Court of Appeals opinion reasoned that the annuity contract could not be construed to contain a requirement of written notice without invalidating another of the contract's provisions, which read, "Upon receipt of such notice . . . at the Administrative Office of the Company, the new designation will take effect as of the date the notice is signed, whether or not the Annuitant or Contract Owner is alive at the time of receipt of such notice." This is an overbroad construction of that provision, which *only* ensures that written notice, offered by the annuitant during his life but not received by the company until after the annuitant's death, will be effective upon receipt. Additionally, although it has little significance to our construction of the contract, the instructions and self-addressed, stamped envelope accompanying the forms were relevant to show that Duane had some minimal awareness of the procedures typically used to effect a change of beneficiary. In that respect, they are similar to the prior beneficiary changes discussed in *Hill.*

■ We must also address Appellees' assertion that Appellant, as a mere contingent beneficiary of the annuity, has no right to dispute their claim to the proceeds of the annuity. Appellees argue that Appellant is not entitled to raise the

relevant technical requirements of the annuity contract—in this case the contract terms relating to changing beneficiaries—because she was not a party to the contract and those terms are present, not for her protection, but for the protection of the insurance company. Appellees cite three Kentucky cases in support of this claim. *Farley v. First Nat'l Bank*, 250 Ky. 150, 61 S.W.2d 1059, 1061 (1933) ("The right of the insured to make the change is absolute unless equities have intervened, which is not the case here, and the beneficiary cannot prevent it by objecting...Whether the change [of beneficiary] shall be made is wholly under his control and the manner of making it is entirely a matter between him and the insurer."); *Hoskins v. Hoskins*, 231 Ky. 5, 20 S.W.2d 1029, 1034 (1929) ("This contract was made by the insurance company with Hoskins. As made it gave his mother certain benefits, but Hoskins had the right to change the contract by giving the benefits to another.... True, he did not have everything done that the contract provided should be done to effectuate this change, but the things not done were things the doing of which were for the protection of the insurance company, and it is not complaining, and the mother cannot complain, as these provisions were inserted in the contract, not for her protection, but for the protection of the company."); *Manning v. Ancient Order of United Workmen*, 86 Ky. 136, 5 S.W. 385, 387 (1887) ("The *intention* of the assured was to change the benefit. He so directed in writing; and now, because he did not do so in the formal manner prescribed by the law for the benefit of the order, it is asked by a third party, whose interest in the insurance was liable to end at any time at the will of the assured, that his intention shall be defeated, although the party for whose benefit the form was prescribed has seen proper to waive it. Such a rule would sacrifice substantial justice to mere form; it would tend to defeat the benevolent aim and purpose of the organization, and the desire and intention of the assured.... If the [insurer] chooses to waive these formalities, it does not lie in the mouth of a third party to complain.").

These cases, however, are clearly distinguishable from the case at hand. In each of them the Court recognized a clear and unequivocal intent by the insured to change the beneficiary of his policy and held that he had substantially complied with the terms of his contract governing such a change. Having so held, the Court noted that a former beneficiary could not argue that an insured had failed to comply with the technical details of the contract in changing beneficiaries. This distinction is perhaps most clear in *Manning*, where the Court held that a former beneficiary had no claim to insurance proceeds that an insurer had delivered to a newly-designated beneficiary. The insurer had waived strict compliance with its procedures after satisfying itself of the insured's intent to change beneficiaries. In this case, where the insured failed to substantially comply with the contractual procedures to change beneficiaries, we will not say that Appellant is prevented from raising these issues to answer the claims of the Appellees.

The holding of the Court of Appeals that Duane Hart had substantially complied with the terms of his insurance contract and thereby designated Appellees as the beneficiaries on his annuity is in error. Accordingly, the judgment of the Court of Appeals is reversed and the case is remanded to the Whitley Circuit Court to enter a summary judgment in favor of Appellant.

COOPER, JOHNSTONE, SCOTT and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion in which GRAVES, J., joins.

GRAVES, J., dissents by separate opinion in which LAMBERT, C.J., joins.

LAMBERT, Chief Justice, dissenting.

I dissent from the majority opinion as I believe that summary judgment was inappropriate. While the facts were undisputed, reasonable persons could differ as to the inference from these facts. Thus, the case should have been submitted to a jury.

The money in question, though held by Hartford, was owned by Hart and he could dispose of it as he pleased. The policy provision, which was not a model of clarity, regarding notice to Hartford was for Hartford's benefit, to protect it from multiple or inconsistent payment obligations. No such issue arose. The money has been paid into the court and Hartford has taken no position with respect to the effectiveness of the beneficiary change.

In my view, the comprehensive question is whether Mr. Hart intended his wife or his children to receive the funds at his death. This factual issue is the dispute at hand.

In *Hill v. Union Central Life Insurance Co.*,[1] this Court noted that substantial compliance has been found where "the insured had done all he could do under the circumstances; all he believed necessary to effect the change or what the ordinary layman would believe was all that was necessary to accomplish the change." Given the uncertainty of the policy provisions concerning change of beneficiary, whether Mr. Hart could have believed he had accomplished the change is a factual question which should be answered by a jury.

GRAVES, J., joins this dissenting opinion.

GRAVES, Justice, dissenting.

Respectfully, I dissent. I dispute the majority's interpretation of the contract provision reading: "Upon receipt of such notice... at the Administrative Office of the Company, the new designation will take effect as of the date the notice is signed, whether or not the Annuitant or Contract Owner is alive at the time of receipt of such notice." The majority limits the applicability of this provision to situations where the annuitant offers written notice that is not received until after his death (i.e. when the annuitant dies as the notice is in transit to the company). However, the contract does not explicitly require the annuitant to offer notice. Rather, this provision states that the new designation is effective as of the date "the notice is signed."

As the Chief Justice mentions in his dissent, the written notice requirement is for Hartford's benefit, to protect the company from multiple payment obligations. Although the contract requires written notice to the company, it does not state that the annuitant must personally offer the notice. Whether Hart manifested his intent to change the beneficiary cannot be deciphered from this ambiguous annuitant contract, but is a question of fact to be decided by the jury.

LAMBERT, C.J., joins this dissent.

---

**1.** 513 S.W.2d 808 (Ky.1974) (internal citations and quotation marks omitted).