RENDERED:  JUNE 15, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0130-DG

KENTUCKY STATE UNIVERSITY                                          APPELLANT


V.
ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-1811
FRANKLIN CIRCUIT COURT NO. 15-CI-00951


DARWIN NATIONAL ASSURANCE                                          APPELLEE
COMPANY N/K/A ALLIED WORLD
SPECIALTY INSURANCE COMPANY


**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**<u>AFFIRMING</u>**

The primary issue in this case is whether the Darwin National Assurance Company, now known as Allied World Specialty Insurance Company ("Allied World"), claims-made-and-reported management liability policy ("Policy") issued to Kentucky State University ("KSU") provided coverage when KSU did not comply with the Policy's notice provisions.  The Franklin Circuit Court, finding ambiguity in the notice provisions, applied the notice-prejudice rule adopted in *Jones v. Bituminous Casualty Corp.*[1] and granted summary judgment in favor of KSU.  The Court of Appeals, however, reversed the Franklin Circuit Court,

---

[1] 821 S.W.2d 798 (Ky. 1991).

concluding that the notice-prejudice rule does not apply to the Policy and that summary judgment in favor of Allied World was warranted. Upon discretionary review, we hold that the rationale for applying the notice-prejudice rule in *Bituminous Casualty* does not exist in this case. Thus, we affirm the Court of Appeals and remand this case to the Franklin Circuit Court to enter a judgment in favor of Allied World. We further clarify that, generally, the notice-prejudice rule shall not apply to a claims-made-and-reported policy that contains unambiguous notice requirements as a condition precedent to coverage.

## I.     Facts and Procedural Background

The Policy KSU purchased from Allied World was for the period from July 1, 2014 to July 1, 2015. The Policy allows claims made against KSU within the policy period to be reported to Allied World up to ninety days after the end of the policy period. Thus, the Policy expired July 1, 2015, and the 90-day extended reporting period ended September 29, 2015.

During the policy period, Dr. Maifan Silitonga and Dr. Teferi Tsegaye submitted Notices of Charges of Discrimination to the United States Equal Employment Opportunity Commission ("EEOC") and Kentucky Commission on Human Rights (collectively, "EEOC Charges") related to their employment at KSU. KSU received written notice of the EEOC Charges on June 23, 2015. On September 2, 2015, Dr. Silitonga and Dr. Tsegaye brought employment-related claims against KSU in Franklin Circuit Court, the substance of which would be covered under the Policy. On October 2, 2015, three days after the extended

2

reporting period expired, KSU, by email, notified Allied World of the litigation and sought coverage under the Policy. Allied World denied coverage.

KSU eventually filed a third-party complaint against Allied World, requesting a declaration of rights under the Policy and asserting a breach of contract claim based on the Policy. KSU also claimed that Allied World violated the Unfair Claims Settlement Practices Act, engaged in bad faith, and violated KRS[2] 304.12-235. KSU and Allied World filed cross-motions for summary judgment on whether the Policy provided coverage to KSU. The circuit court granted summary judgment in favor of KSU, relying on *Bituminous Casualty.*

The circuit court interpreted the Policy as not clearly providing that strict forfeiture of coverage is a consequence of KSU's failure to promptly notify Allied World of a claim. Based upon that interpretation, the circuit court concluded that the notice-prejudice doctrine applies, requiring coverage under the Policy unless Allied World showed that the delay in notice caused it prejudice. Because Allied World could not be said to be prejudiced by KSU being three days late in providing notice of the claim, the circuit court determined that Allied World was obligated to indemnify KSU for the underlying claims. Furthermore, with timely notice being at the heart of this dispute, the circuit court held that because the Policy is unclear as to how notice is required to be given, the notice could be considered timely if a three-day mailbox rule were applied.

---

[2] Kentucky Revised Statutes.

3

The Court of Appeals disagreed and held that the terms of the Policy are clear about the extended reporting period: KSU was required to provide written notice of a claim against it within ninety days after the Policy ended. The Court of Appeals further found that the Policy provided a certain procedure for notifying the insurer of a claim. The Court of Appeals distinguished the instant Policy from the *Bituminous Casualty* policy in that the latter, while requiring "prompt notice" of a claim, failed to specify a reporting timeline. The Court of Appeals determined that the notice-prejudice rule does not apply to the Policy in this case.

The Court of Appeals also concluded that 806 KAR[3] 12:095 does not support KSU's argument for coverage and that the CR[4] 6.05[5] mailbox rule does not apply to contract disputes. The Court of Appeals reversed the circuit court. Thereafter, this Court granted KSU's petition for discretionary review.

## II.    Standard of Review

---

[3] Kentucky Administrative Regulations.

[4] Kentucky Rules of Civil Procedure.

[5] CR 6.05 states:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail or electronic service, 3 days shall be added to the prescribed period. This provision shall not apply to the service of summons by mail under Rule 4.01(1)(a).

4

CR 56.03 authorizes summary judgment "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When reviewing a summary judgment on appeal, an appellate court considers whether the circuit court correctly found that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Inter–Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 165 (Ky. 2012). Because we are faced with a question of law, the interpretation and legal effect of a written contract, we review the opinion of the Court of Appeals de novo. *Kearney v. Univ. of Ky.*, 638 S.W.3d 385, 397 (Ky. 2022); *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992).

### III.    Analysis

As noted above, the primary issue before this Court is whether the circuit court properly interpreted the notice provisions within the claims-made-and-reported insurance policy issued by Allied World to KSU and then, based upon that interpretation, correctly assessed the role, if any, that the notice-prejudice rule adopted in *Jones v. Bituminous Casualty Corp.* plays in this case. Unlike the circuit court, we conclude that the Policy provisions clearly warned KSU that noncompliance with the notice requirements would result in forfeiture of coverage. Given no ambiguity exists in the notice provisions, application of the notice-prejudice rule is unwarranted.

5

KSU also argues that even if the Policy is unambiguous and the notice-prejudice rule does not apply, other reasons exist to affirm the circuit court. However, we conclude that even if 806 KAR 12:095 Section 4(3) were applicable to a private cause of action, the regulation does not benefit KSU in this case. Lastly, we disagree with KSU that the Policy's notice requirement may be interpreted as analogous to CR 6.05.

### A.    Construction and Interpretation of Contracts.

"In the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 687 (Ky. 2012) (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)); *see also* KRS 304.14-360. "[W]ords which have no technical meaning in law, must be interpreted in light of the usage and understanding of the common man." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007) (citation omitted). When "the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002).

If no ambiguity exists in the contract, a reviewing court must determine the intention of the parties "from the four corners of that instrument." *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290,

6

298 (Ky. 2010) (citation omitted). Ambiguity is generally resolved in favor of the insured. *Thomas v. State Farm Fire and Cas. Co.*, 626 S.W.3d 504, 507 (Ky. 2021). Pertinent to the Policy at bar, "'[c]ondition precedent' is a legal term of art with a clear meaning: 'An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.'" *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 785 (Ky. 2017) (citations omitted).

**B. Jones v. Bituminous Casualty Corp. *Does Not Apply in This Case. The Policy Terms Are Unambiguous and Must Be Enforced as Written.***

KSU argues that the four principal reasons *Bituminous Casualty* expressed for applying the notice-prejudice rule exist in this case and that KSU is entitled to coverage because Allied World cannot show prejudice when notice of the claim was just three days late. Allied World, on the other hand, maintains that the Policy terms are unambiguous and not unreasonable, thus, the Policy must be enforced as written, otherwise KSU would be extended insurance coverage beyond the bargained-for terms. Allied World also advocates that the notice-prejudice rule does not apply to claims-made-and-reported policies.

Our analysis begins by setting forth the relevant policy language. We then consider whether *Bituminous Casualty* supports application of the notice-prejudice rule to the Policy between Allied World and KSU and conclude it does not.

## 1.  The Policy.

The Policy provisions which explain the insurer's coverage obligations in relation to the insured's reporting obligations and which present the notice requirements are found in three clauses.[6]

The Insuring Agreement for Employment Practices Liability Coverage states:

> The Insurer shall pay on behalf of any Insured the Loss arising from a **Claim**, **first made during the Policy Period** (or Discovery Period, if applicable) against such Insured for any Wrongful Act, **and reported** to the Insurer **in accordance with Section V. of the General Terms and Conditions and Section IV. of this Coverage Section**.[7]

Detailing the requirements for providing notice of a claim, Section IV. of the Coverage Section and Section V. of the General Terms and Conditions, respectively, state:

> **The Insured(s) shall,** *as a condition precedent* **to the obligations of the Insurer** under this Policy, **give written notice** to the Insurer, *at the physical or email address* indicated in Item 7. of the Declarations, of a Claim made against an Insured **as soon as practicable** after the Organization's General Counsel, Director of Human Resources or Risk Manager, or any individual with functionally equivalent responsibilities becomes aware of the Claim.[8]

> Notwithstanding the above, **in no event shall such notice of any Claim be provided to the Insurer later than ninety (90) days after the end of the Policy Period** or Discovery Period if purchased.  If *mailed*, the date of mailing shall constitute the date

---

[6] The bold typeface used within the Policy to highlight defined terms is removed. Emphasis within the Policy provisions below is added.

[7] Employment Practices Liability Coverage § I.A. (Insuring Agreements).

[8] Employment Practices Liability Coverage § IV. (Notice of a Claim).  This provision is prefaced: The following provision shall apply in lieu of Section V.A. of the General Terms and Conditions.

that such notice was given and proof of mailing shall be sufficient proof of notice.[9]

Furthermore, with regard to reporting beyond the policy period, the Policy also provides the right to purchase a Discovery Period after the expiration of the Policy. The Policy states:

> If this Policy, or one or more Coverage Sections of this Policy, is cancelled by either the Named Insured or the Insurer for any reason other than non-payment of premium, or the Insurer refuses to renew this Policy, the Insured(s) shall have the right to purchase a Discovery Period of up to three (3) years following the effective date of such cancellation or non-renewal. . . .

KSU did not purchase Discovery Period coverage.

### 2. The Notice-Prejudice Rule.

In *Bituminous Casualty*, the insurance company sought a declaration of rights that it had no obligation to defend or to indemnify under a liability policy issued to the insured mining company. 821 S.W.2d at 799. The insurance policy stated that in the event of an "occurrence," the duty of the insured was to "see to it that [the insurer is] notified promptly of an 'occurrence' which may result in a claim." *Id.* at 800. The insured notified the insurer of an accident six and one-half months after it occurred. *Id.* The circuit court in *Bituminous Casualty* decided the prompt notice clause was breached by a delay of that length. *Id.* at 800-01.

Upon its review of the contract, the *Bituminous Casualty* court reconsidered the rule expressed in *Reserve Ins. Co. v. Richards*, 577 S.W.2d

---

[9] General Terms and Conditions § V.B. (Notice of Claim).

417, 419 (Ky. 1979) – that in a coverage dispute the insurer need not prove actual prejudice when the insured fails to give timely notice,[10] and adopted the inverse rule that "an insurer cannot withdraw coverage on the ground that a notice condition has not been met unless the insurer can show that it was prejudiced by the act of the insured." *Bituminous Cas.*, 821 S.W.2d at 801. We explained that while the insurer bears the burden to prove prejudice, the standard of proof is not actual prejudice but "whether it is reasonably probable that the insurance carrier suffered substantial prejudice from the delay in notice." *Id.* at 803. We rejected application of the rule expressed in *Reserve* as unreasonable for the circumstances presented in *Bituminous Casualty* based upon "at least four major features in . . . insurance law." *Id.* at 801.

First, we observed that standard form insurance policies, like the one under consideration, are recognized as contracts of adhesion because they are not negotiated and as the contract did not clearly define prompt notice or warn of a forfeiture, the policy had a latent ambiguity to be resolved in favor of the insured.[11] *Id.* at 801. Second, considering the doctrine of reasonable

---

[10] *Reserve* states:

> Compliance with the notice provisions of an insurance policy is a condition precedent to recovery on the policy. The reasonableness and validity of such provisions in an insurance policy have been consistently recognized. It is not necessary for the insurer to prove actual prejudice from failing to give timely notice. We are of the opinion that a period of 13 months from occurrence to notice is not "as soon as practicable" and is not timely notice so as to comply with a condition precedent to recovery. *Id.* at 419 (internal citations omitted), *overruled by Bituminous Casualty*, 821 S.W.2d 798.

[11] Regarding the contract's failure to define prompt notice and to warn of forfeiture, the *Bituminous Casualty* court stated:

expectations, we concluded that while the policy clearly imposed a duty on the insured to promptly notify the insurer, by failing to define prompt notice or to warn of a forfeiture, denial of coverage was beyond the reasonable expectation of the ordinary insurance consumer. *Id.* Third, considering the insured purchased the policy of public liability insurance because it was required by law, as a matter of public policy, "a clause working a strict forfeiture regardless of prejudice unreasonably interferes with coverage required by mine safety regulations." *Id.* And fourth, we held that the policy's clause did not impose upon the insurer unreasonable and unforeseeable risks not accounted for in its premiums. *Id.* at 802-03.

### 3. Reasons For Applying the Notice-Prejudice Rule in *Bituminous Casualty* Do Not Exist in This Case.

Considering *Bituminous Casualty*, KSU first argues that the Policy is a contract of adhesion with no specific forfeiture language. We disagree. As to forfeiture, reading Sections IV. and V. together, the Policy expressly informed KSU that a condition of coverage – a condition precedent – was giving written notice of a claim as soon as practicable, but in no event was such notice of any claim to be provided to Allied World later than ninety days after the end of the

> A strict forfeiture interpretation of the prompt notice requirement excludes from the equation both the reasons why the insured failed to give prompt notice, such as whether a layman would realize that there was a covered occurrence, and the question whether the insurance carrier suffered any substantial prejudice from the delay. Absent language in the contract clearly spelling out the meaning and parameters of prompt notice and automatic forfeiture consequences, the reach of the term and the consequences are vague. The policy has a latent ambiguity which is subject to the rule of construction that applies to a contract of adherence.

Policy period. KSU did not purchase Discovery Period coverage, so the reporting period did not extend beyond the 90-day reporting period. The Policy clearly defined when notice was due and the consequences if notice is late. Particularly, the Policy informed KSU that if the notice provisions were not met, Allied World had no obligation to KSU under the Policy. A "policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994).

Because the Policy unambiguously provided no coverage if KSU failed to comply with the notice provisions, we must address the remaining part of KSU's argument – whether the Policy is a contract of adhesion. The circuit court did not address this argument.

KSU describes *Bituminous Casualty* as allowing courts to consider whether the insurance policy is a "form" policy, known as a contract of adhesion, when determining whether an insurer can deny a claim based on late notice. *Bituminous Casualty's* adhesion contract analysis reflects that, generally, standard form insurance policies used in consumer transactions will be construed as contracts of adhesion. However, "[a]dhesion contracts are not *per se* improper." *Schnuerle v. Insight Commc'ns. Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012) (citation omitted); *see also Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (discussing procedural and substantive unconscionability). Consequently, because we have found the

12

Policy's notice provisions unambiguous, for KSU to prevail under this argument, KSU must show that the Policy is an unenforceable contract of adhesion.

As this Court has explained, and as *Bituminous Casualty* succinctly points out, multiple criteria are to be met for a contract of adhesion to be deemed unfair and unenforceable: (1) the contract is a standardized contract; (2) the contract is imposed and drafted by the party of superior bargaining strength;[12] and (3) the contract relegates to the subscribing party only the opportunity to adhere to the contract or reject it. *Schnuerle*, 376 S.W.3d at 576 (citation omitted). Thus, a standard form agreement between the parties does not necessarily make the contract an unenforceable contract of adhesion.

KSU would be entitled to summary judgment on the question whether the Policy is a contract of adhesion if it can point to evidence of record revealing facts which show it is not possible for the adverse party to prevail. *Welch v. Am. Publ'g Co. of Ky.*, 3 S.W.3d 724, 730 (Ky. 1999); *see also Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985) (citing *Kaze v. Compton*, 283 S.W.2d 204 (Ky. 1955)).

KSU argues that the Policy's terms, including its notice provisions, were not negotiated by the parties but instead were drafted by Allied World; the

---

[12] As this Court has noted, "there is a significant difference between an adhesion contract in which the parties have disparate bargaining power and a contract which voluntarily has been entered into by sophisticated and knowledgeable businessmen concerning a financial transaction of considerable magnitude." *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501, 504 (Ky. 1998).

13

Policy provisions that are the subject of this dispute are standard forms; and no evidence of record shows that the Policy was anything but a contract of adhesion. Allied World rebuts KSU's arguments by pointing to the amendments appended to the Policy, modifying coverage, and to the fact that KSU was offered an extension of the reporting period but chose not to purchase that extension.

The evidence KSU cites, and which may be viewed as supporting a claim that the Policy is an unenforceable contract of adhesion, is limited. While KSU's evidence may support its contention that the Policy is a standard form, KSU does not point to evidence supporting a conclusion that even if Allied World drafted the Policy, Allied World is the party of superior bargaining strength or that the contract was offered on a "'take it or leave it' basis without affording [KSU] a realistic opportunity to bargain." *See Bituminous Cas.*, 821 S.W.2d at 801. Based upon the cited evidence, KSU has not shown that it is entitled to a judgment as a matter of law that the contract is an abusive and unenforceable contract of adhesion. *See id.*; *Welch*, 3 S.W.3d at 730 (Ky. 1999) (citing *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 482-83 (Ky. 1991)).

KSU next offers the doctrine of reasonable expectations as a basis under *Bituminous Casualty* for application of the notice-prejudice rule. KSU argues that without clear warning, it was beyond KSU's reasonable expectations that Allied World would decline coverage if KSU provided untimely notice. However, because we find no ambiguity in the notice provisions, that argument is

14

resolved. The Policy provided clear warning of forfeiture if notice of a claim was not timely given.

Regarding public policy reasons for requiring Allied World to provide coverage under the Policy, KSU argues that while it is not statutorily required to purchase a liability insurance policy, KSU is authorized by statute to purchase the insurance to protect itself, its employees and administrators, and ultimately, public funds. KSU argues that because it is not a private party with no public interest, public policy strongly supports applying the notice-prejudice rule since as the circuit court observed, "[t]o allow the insurer to escape responsibility to defend this claim would create a windfall for the insurer at the expense of the public." However, unlike the circuit court, we have concluded that the Policy provisions at issue are unambiguous. Given the plain terms of the contract, their full force and effect does not equate to creating a windfall for the insurer. In sum, "in the absence of circumstances justifying relief, courts do not make contracts different from those that the parties make for themselves, even when forfeiture provisions are harsh." *Miller Dairy Prods. Co. v. Puryear*, 310 S.W.2d 518, 521 (Ky. 1957) (citation omitted).[13]

### 4. Application of the Notice-Prejudice Rule to Claims-Made-and-Reported Policies.

While this case is resolved based upon contract law principles, we consider the well-briefed discussion about application of the notice-prejudice

---

[13] Based upon the foregoing conclusions, the question of whether Allied World's premium pricing structure would be affected if the notice-prejudice rule applied need not be addressed.

15

rule to claims-made-and-reported insurance policies. As a starting point, Allied World argued in its summary judgment motion that it should be granted judgment based upon contract law. However, because no Kentucky Supreme Court case specifically addresses whether the notice-prejudice rule applies to claims-made-and-reported policies, Allied World also advocated that claims-made-and-reported policies are not subject to the notice-prejudice rule. Allied World maintains that position before this Court.

More particularly, Allied World outlines characteristics of claims-made-and-reported policies which contrast with occurrence policies, making the notice-prejudice rule inapplicable. For example, "[g]enerally, a notice requirement is a material provision in a claims-made-and-reported policy." *Ashland Hosp. Corp. v. RLI Ins. Co.,* No. 13-143-DLB EBA, 2015 WL 1223675, at *9 (E.D. Ky. Mar. 17, 2015), *aff'd,* 632 Fed App'x 271, 272 (6th Cir. 2016) (per curiam). As explained in *C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.,*

> A claims-made-and-reported policy provides coverage only for claims *made* against the insured and *reported to* the insurer during the life of the policy regardless of when the underlying incident occurred. Timely notice of a claim is the event that not only *triggers* coverage, but also *defines* its scope. An occurrence-based policy, by contrast, provides coverage for incidents which *occur* during the life of the policy without regard to when a claim is brought. While prompt notice allows the insurer to investigate and defend the claim, it has no effect as to the scope of coverage.

No. 5:13-CV-00173-TBR-LLK, 2016 WL 3460445, at *5 (W.D. Ky. June 21, 2016).

Allied World emphasizes that Kentucky federal decisions have predicted that Kentucky will not apply the notice-prejudice doctrine to claims-made-and-reported policies. But that prediction is not unqualified. For example, in *C.A. Jones Management Group, LLC*, the Western District Court of Kentucky stated it predicts that the "Kentucky Supreme Court [will] not extend the notice-prejudice rule to claims-made-and-reported policies that clearly and unambiguously requires timely notice as a condition precedent to coverage." *Id.* Pertinently, the primary basis for the Western District Court's prediction is application of Kentucky's general principles of contract law to unambiguous insurance policy terms. *Id.* Like the Western District Court, the Eastern District Court of Kentucky and the Sixth Circuit Court of Appeals include within their prediction the point that the notice-prejudice rule will not apply when the policy unambiguously requires timely notice.

In *Ashland Hospital Corp. v. RLI Insurance Co.*, the Eastern District Court of Kentucky stated that it "predicts that the Kentucky Supreme Court [will] adopt the majority position and conclude that requiring an insurer to show prejudice under a claims-made-and-reported policy rewrites the contract and eliminates the benefit the reporting requirement provides to both parties." 2015 WL 1223675, at *10. And the Sixth Circuit Court of Appeals, affirming the Eastern District Court's decision, stated that it agrees "with the district court's prediction [based upon its analysis of *Jones v. Bituminous Casualty Corp.*] that the Supreme Court of Kentucky [will] not extend the notice-prejudice rule to a claims-made policy like the excess policy here, which

17

contains unambiguous notice requirements as conditions precedent to collecting under the policy." 632 Fed. App'x. at 272.

The Court of Appeals' opinion discusses the differences between occurrence, the type of policy at issue in *Bituminous Casualty*, and claims-made-and-reported insurance policies; the purpose of the policies; the manner in which other courts tend to construe the policies; contract law generally; and public policy reasons behind applying the notice-prejudice rule to this claims-made-and-reported Policy. The Court of Appeals concluded that the notice-prejudice rule does not apply to the unambiguous Policy. We agree and clarify that generally, the notice-prejudice rule does not apply to a claims-made-and-reported policy that contains unambiguous notice requirements as a condition precedent to coverage. The reason is simple: "Parties are bound by the clear and unambiguous terms of their contracts." *Versailles Farm Home & Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022). As a policy matter, courts are not to rewrite contracts containing explicit terms. *St. Paul Fire & Marine*, 870 S.W.2d at 226. Still, consistent with long standing precedent, "every company's [claims-made-and-reported] policy must be construed as it is written and [contract law principles] applied to the developed facts in the particular case." *Mutual Life Ins. Co. of N.Y. v. Smith*, 79 S.W.2d 28, 34 (Ky. 1935).

### C. 806 KAR 12:095 Section 4(3) Cannot Be Construed for KSU's Benefit.

KSU argued in its briefing to the circuit court that Allied World must comply with 806 KAR 12:095 Section 4(3). Viewing 806 KAR 12:095 Section

4(3) as a regulation which goes beyond the notice-prejudice rule, KSU asserted that Allied World had not and could not demonstrate that KSU's notice, being three days outside the 90-day extended reporting period, "is so unreasonable to constitute a breach of the first-party claimant's duty to cooperate with the insurer." Allied World rebutted, pointing out 806 KAR 12:095 Section 2(3) plainly states that 806 KAR 12:095 does not create a private cause of action.

In its briefing to this Court, KSU has clarified that it asserts no cause of action under 806 KAR 12:095; rather it simply points to the regulation as setting forth minimum standards that insurers are required to follow. However, as the Court of Appeals noted, a condition within the regulation makes it inapplicable to the Policy, and the regulation does not support KSU's argument for coverage.

806 KAR 12:095 Section 4(3) states:

Section 4. Misrepresentation of Policy Provisions. . . . (3) **Insurers shall not deny a claim** based upon the failure of a first-party claimant to give written notice of loss within a specified time limit **unless written notice of loss is a written condition in the policy**, certificate, or contract and the first-party claimant's failure to give written notice after being requested to do so is so unreasonable as to constitute a breach of the first-party claimant's duty to cooperate with the insurer.

(Emphasis added).

Pursuant to 806 KAR 12:095 Section 4(3), an insurer may deny a claim based upon the failure of a first-party claimant to give written notice of loss within a specified time limit when the notice of loss is a written condition of the policy. Although KSU argues otherwise, because providing timely notice is a condition of Policy coverage, the question whether KSU breached a "duty to

cooperate" by failing to give written notice within the extended policy period does not apply to KSU.[14]  We agree with the Court of Appeals that based upon the plain reading of 806 KAR 12:095 Section 4(3), the regulation does not support KSU's argument for coverage.

### D. Accounting for United States Postal Service Mailing Time Does Not Save KSU's Late Email.

Lastly, KSU contends that when considering the physical mailing time, it substantially complied with the notice requirements.  KSU maintains that had the notice been mailed through the United States Postal Service on September 29, 2015, a date timely under the Policy, the notice would not have been received until October 2, 2015, the date the emailed notice was received, or later.  KSU asserts that, in line with the circuit court's observation that the mailing requirements were not clear, the Policy contemplates receiving claim notices shortly after the 90-day extended reporting period expires.

However, Allied World emphasizes that the Policy provided for both mailed and emailed notices and since KSU provided notice by email, the Section IV. "[i]f mailed" provision did not apply.  Upon review of the Policy, we conclude that the mail and email provision required mailing or emailing within the 90-day extended reporting period; under the Policy, allowance for receipt of timely-deposited physical mail is irrelevant to the emailed notice.  By the terms of the Policy, KSU's email may not be found timely.

---

[14] *See* 13 Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, *Couch on Insurance* § 186:13 (3d ed., Thomson Reuters, November 2022 Update).

## IV.    Conclusion

We affirm the Court of Appeals' decision reversing the Franklin Circuit Court.  The Policy's notice provisions are clear and unambiguous.  Allied World was entitled to deny coverage to KSU when KSU did not comply with the notice requirements.  Accordingly, we remand this case to the Franklin Circuit Court with directions to vacate its grant of summary judgment in favor of KSU and to enter an order granting summary judgment in favor of Allied World instead.

All sitting.  Conley, Keller and Nickell, JJ., concur.  Lambert, J., concurs in part and dissents in part by separate opinion in which Bisig and Thompson, JJ., join.

LAMBERT, J., CONCURRING IN PART, DISSENTING IN PART:  I concur with the Majority's opinion that generally, the notice-prejudice rule does not apply to an unambiguous claims-made-and-reported policy containing notice requirements as a condition precedent to coverage.  However, I respectfully dissent with regard to the Majority's interpretation of the notice provisions of the Policy regarding forfeiture and its decision that the notice-prejudice rule does not apply to this Policy.  Reasons stated in *Bituminous Casualty* for applying the notice-prejudice rule exist here.  Consequently, Allied World was required to show prejudice before it could withdraw coverage of the Policy from KSU.  Without that showing, KSU is entitled to coverage under the Policy and summary judgment in its favor.  Furthermore, I agree with KSU that it

21

substantially complied with the notice requirement and also on that basis, is entitled to coverage under the Policy.

First, I agree with the Majority that the terms of the Policy are clear in regard to KSU's obligation to give written notice. However, unlike the Majority, I agree with the circuit court that the Policy does not clearly explain or state that automatic forfeiture of coverage is the consequence of failure to provide notice within the given timeframe. As stated in *Bituminous Casualty*,

> Absent language in the contract clearly spelling out the meaning and parameters of prompt notice and automatic forfeiture consequences, the reach of the term and the consequences are vague. The policy has a latent ambiguity which is subject to the rule of construction that applies to a contract of adherence."[15]

The ambiguity thus weighs in favor of application of the notice-prejudice rule: without strict forfeiture being a clear consequence of the insured's failure to follow a notice provision, the insurer must demonstrate "substantial prejudice from the delay."[16]

Furthermore, I agree with the circuit court's analysis of the other *Bituminous Casualty* factors. Because ambiguity exists in the Policy's language in regard to forfeiture consequences, a denial of coverage based upon untimely notice would be contrary to KSU's reasonable expectations. While I agree with Allied World that KSU's public policy argument is not as forceful as that in *Bituminous Casualty* because KSU was not required to purchase the Policy, because the Policy serves the public interest by protecting the public

---

[15] 821 S.W.2d at 802.

[16] *See id.* at 801-02.

22

university, its employees and administrators, and Kentucky taxpayers, I agree with the circuit court that public policy supports applying the notice-prejudice rule. Otherwise, as the circuit court observed, allowing the insurer to escape responsibility to defend this claim would create a windfall for the insurer at the expense of the public. Lastly, without a showing of prejudice by Allied World, because KSU's notice was only three days late and was received within a timeframe contemplated by the Policy, there obviously was no increase in risk to Allied World from the late notice and Allied World's premium pricing would not be affected. Consequently, I would affirm the circuit court's application of the notice-prejudice rule and its grant of summary judgment to KSU.

I also agree with KSU's alternative argument[17] that when taking physical, three-day mailing time into consideration, KSU substantially complied with the notice requirements. Had KSU mailed the notice with it arriving on the same day it arrived in the email box, there would be no windfall to Allied World. While it is clear that the Policy's mail and email provision required mailing or emailing within the 90-day extended reporting period, given that the Policy would allow Allied World to receive USPS mail outside the 90-day extended reporting period, without prejudice, KSU's email may be found as substantially complying with the notice requirement.[18]

---

[17] Because KSU has clarified that it asserts no cause of action under 806 KAR12:095, I refrain from expressing an opinion as to whether the regulation supports KSU's argument for coverage.

[18] Substantial compliance depends upon the degree to which the insured has complied with the actual policy language. *See Hill v. Union Cent. Life Ins. Co.*, 513

In sum, because the Policy did not clearly warn KSU that automatic forfeiture of coverage was a consequence of not giving notice of a claim within the 90-day extended reporting period, and because KSU substantially complied with the notice requirement, I would reverse the Court of Appeals and reinstate the summary judgment entered by the Franklin Circuit Court.

Bisig and Thompson, JJ., join.

COUNSEL FOR APPELLANT:

Philip Gray Fairbanks
M. Austin Mehr
Erik D. Peterson
Mehr Fairbanks & Peterson Trial Lawyers, PLLC

COUNSEL FOR APPELLEE:

Chad Propst
Ian C.B. Davis
B. Todd Thompson
Thompson Miller & Simpson, PLC

COUNSEL FOR AMICUS CURAE, COMPLEX INSURANCE CLAIMS LITIGATION ASSOCIATION

Aaron D. Griffith
Walters Richardson, PLLC

Laura A. Foggan
Crowell & Moring, LLP

---

S.W.2d 808, 808-09 (Ky. 1974); *Hart v. Hart,* 201 S.W.3d 457, 462 (Ky. 2006); *see also Newark Ins. Co. v. Ezell,* 520 S.W.2d 318, 319 (Ky. 1975).